168 P.3d 526

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Joseph SUNDERLAND, Defendant–Appellant.**

**No. 26641.**

Supreme Court of Hawai'i.

Sept. 21, 2007.

Reconsideration Denied Oct. 19, 2007.

Deborah L. Kim, Deputy Public Defender, for defendant-appellant.

Janet R. Garcia, Deputy Prosecuting Attorney, for plaintiff-appellee.

NAKAYAMA, J., with whom DUFFY, J., joins; MOON, C.J., Concurring and Dissenting; LEVINSON, J., Dissenting; and ACOBA, J., Concurring and Dissenting Separately.

**Opinion of the Court by NAKAYAMA, J.**

Defendant–Appellant, Joseph Sunderland ("Sunderland"), appeals from the third circuit district court's [1] June 23, 2004 judgment convicting him of the offense of Promoting a Detrimental Drug in the Third Degree, in violation of Hawai'i Revised Statutes ("HRS") § 712–1249.[2] Sunderland's sole

---

**1.** The Honorable Colin L. Love presided.

**2.** HRS § 712–1249 (1993) provides that "[a] person commits the offense of promoting a detri-

point of error on appeal asserts that his possession of marijuana at home and for religious purposes was protected by the free exercise clause of the first amendment to the United States Constitution, as well as his right to privacy under article I, section 6 of the Hawai'i Constitution.

For the following reasons, we hold that Sunderland's argument is without merit and affirm the district court's judgment of conviction.

## I. BACKGROUND

The material facts of the present case are not in dispute.

On June 27, 2003, Officer Denise Smith ("Officer Smith") was investigating a report of a missing adolescent. Officer Smith was informed that the missing child was known to retreat to the Sunderland residence. Upon arrival, Officer Smith spotted Sunderland on the lanai and inquired about the child. Sunderland responded that he did not know and went inside the house to check. From her vantage point on the lanai, Officer Smith observed three girls sleeping on a futon bed in the living room. She subsequently observed a six-inch marijuana pipe on the kitchen table. When Sunderland returned, Officer Smith asked him to retrieve the pipe. She asked him who the pipe belonged to, and Sunderland responded, "That's mine. I use it for religious purposes." Sunderland then produced a "religious card" from his wallet indicating his membership in a religious organization called the "Cannabis Ministry." Sunderland informed Officer Smith that it was his right to exercise his religious beliefs. Officer Smith instructed Sunderland not to say anything further and placed him under arrest.

At the police station, Sunderland waived his *Miranda* rights and made a statement. He claimed that he had been practicing his religion since he was sixteen years of age.

He further indicated that he had used the pipe to smoke marijuana that morning, and he forgot to put it away.[3]

On January 9, 2004, Sunderland was orally charged with committing the offense of Promoting a Detrimental Drug in the Third Degree. Sunderland thereafter filed a "Motion To Dismiss Or Judgment Of Acquittal" asserting that the charged conduct constituted protected activity pursuant to his constitutional right to the free exercise of religion.[4] The matter proceeded to trial on January 23, 2004.

At trial, the prosecution orally charged Sunderland for a second time, as follows:

The charge is that on or about the 27th day of June, 2003, in the District of North Kohala, County and State of Hawaii, Joseph Sunderland did knowingly possess marijuana, thereby committing the offense of Promoting a Detrimental Drug in the Third Degree, in violation of Section 712–1249, Hawaii Revised Statutes, as amended.

Following the close of the prosecution's case in chief, Sunderland called Reverend Roger Christie ("Christie") to the witness stand. Christie testified that he was ordained in the "Religion of Jesus Church," and that he subsequently organized a sect called the "Hawaii Cannabis Ministry." Christie explained that his religion centers around the sacramental ingestion of cannabis, and that the use of cannabis is mandatory in his ministry. He pointed to multiple passages from the Bible and interpreted them as indirect references to the cannabis plant. For example, Christie claimed that "the word 'kannabosm' in the holy anointing oil of Moses and the christening oil of Jesus is cannabis." According to Christie, cannabis "has a unique way of elevating the consciousness[,]" distinct from other mind-altering substances, and that prohibiting the use of

mental drug in the third degree if the person knowingly possesses any marijuana or any Schedule V substance in any amount."

3. The parties stipulated that, if called as a witness, the criminologist would testify that the residue in the pipe was marijuana.

4. The State of Hawai'i ("prosecution") filed a responsive "Trial Memorandum" on May 12, 2004. On May 13, 2006, Sunderland filed a "Supplemental Memorandum In Support Of Motion To Dismiss Or Judgment Or Acquittal."

cannabis would have a "devastating" effect on his ministry.

Sunderland subsequently exercised his right to testify. Sunderland admitted possession of the pipe recovered by Officer Smith, and he further admitted that the residue in the pipe was marijuana. However, Sunderland thereafter testified that he was a member of Christie's ministry and used marijuana for religious purposes. Sunderland claimed that ingesting marijuana was a religious experience that produced a "very unique state of mind" that brought him closer to what he considered "God." Sunderland explained, "And . . . I believe that—in part of . . . understanding God, I believe that God put the holy herb onto this earth to help mankind to better understand Him."

At the close of the evidentiary portion of trial, the court rejected Sunderland's argument that his constitutional right to the free exercise of religion precluded his prosecution for possessing marijuana. First, the court assumed that Sunderland's religious beliefs were sincere, as follows:

> THE COURT: The question of whether or not it is a legitimate, seriously held religious belief, that's something that is almost impossible for a Court to address, whether or not somebody sincerely believes in a religious matter. We fight wars over who has the only true God.
>
> If a judge happened to be an atheist, how would you convince him or her that it's just—I'm not going there. *I will assume that there is a—that the religious aspect is met.*

(Emphasis added.) The court nevertheless perceived a compelling state interest in precluding the use and possession of illicit drugs in the presence of minors:

> This case is one where he's using and possessing marijuana in his home where at least at the time when he is arrested there's four minors. And the state does

have a compelling interest in protecting minors, juveniles, children, from an environment where marijuana is being used, from an environment where its use is encouraged. Because minors use marijuana. And this Court sees the problems that are created by that all the time.

> So in this case, not some other case, in this case I do find a compelling state interest in prohibiting the possession or use of marijuana for religious purposes . . . in the home when minors are present[.]

The court thereafter found Sunderland guilty of the charged offense, and sentenced him to a $150 fine and $25 in fees.

Sunderland filed a timely notice of appeal on June 17, 2004.

## II. STANDARD OF REVIEW

■ Sunderland's sole point of error on appeal questions the constitutionality of his prosecution for possessing marijuana in the privacy of his home for religious purposes. "We review questions of constitutional law *de novo*, under the right/wrong standard." *Onaka v. Onaka*, 112 Hawai'i 374, 378, 146 P.3d 89, 93 (2006).

## III. DISCUSSION

### A. Sunderland Failed to Preserve His Right to Privacy Argument on Appeal.

As an initial matter, we note that Sunderland failed to preserve his constitutional right to privacy argument on appeal.

In his opening brief, Sunderland claims that trial counsel "framed the constitutional question as a blend of freedom of religion and privacy interests. . . ." However, that assertion is belied by the record. The parties did not address any right to privacy argument in any of their written submissions before the circuit court.[5] Sunderland at-

---

5. We note that Sunderland cited *Ravin v. State*, 537 P.2d 494 (Alaska 1975) in his supplemental memorandum in support of his motion to dismiss or for a judgment of acquittal. In *Ravin*, the Alaska Supreme Court held that the defendant's personal, non-commercial use of marijuana in his home was constitutionally protected. *Id.* at 511. However, Sunderland did not cite *Ravin*

for the purpose of asserting a right to privacy argument. Rather, Sunderland cited *Ravin* for its reasoning that the prohibition on the possession of marijuana in the privacy of the possessor's home did not further a legitimate state interest. Sunderland sought to use the *Ravin* court's reasoning to buttress his argument that

tempts to bootstrap a privacy argument by referring to the following arguments orally presented before the circuit court at a hearing conducted on May 19, 2004:

> The next question is: Has the state shown a compelling interest? I say that these things about driving a car while you're under the influence of marijuana, all these things are red herrings because that's not what this case is about. This case is about someone in his own home possessing a small amount of marijuana for religious purposes. That is the only issue in this case.
>
> It is not an issue in this case whether or not you can smoke marijuana and drive a car, whether or not pregnant women should smoke marijuana, any of those others [sic] things. This is an adult male in his own home smoking marijuana for religious purposes. That is the issue. There's no issue beyond that.
>
> So whether or not any of these other things is a good idea isn't before this Court, and it's not what we're addressing. They're not asking, hey, he's going down the highway at ninety miles an hour smoking a large joint, and now you're getting him in trouble for that. No. He's getting in trouble for having it at his house. And that's all the issue is. The issue is not a precedent for doing it some place else, only in your own home for religious purposes.
>
> . . . .
>
> The state—I'm not here to litigate whether or not to permit someone not to drive a car while intoxicated on marijuana. That's a totally different issue than can you do something at your own house, which would bring us to this general idea of what is a compelling state interest.
>
> . . . .
>
> This case is only about the use of marijuana in the home. *And the Supreme Court of Alaska, finally, in not addressing the same issue, addressing a slightly different issue, basically said that the privacy rights, okay—and it's not an issue here. They have done that case in Hawaii. And*

the prosecution failed to demonstrate a compel-

> *on a privacy level, you're not allowed to have marijuana. They have raised that.*
>
> . . . .
>
> So I would say that . . . it is not reasonable to say that there's a compelling state interest against the religious use of marijuana in your own home because that's the only issue here. He's found in his home with just a small amount. It's not I've got a ton in my home. Says a small amount in your home. That is what the issue is here. Not the driving.
>
> There may be a compelling state interest to say you cannot drive when you're intoxicated with marijuana, or pregnant women shouldn't, all those things could be compelling interest. That's not what we're asking for. We're asking a very limited thing here: Only in your own home because that's the issue presented here.

(Emphasis added.)

Although Sunderland asserted that he used marijuana for religious practices in his own home, he did not seek to draw the conclusion that his right to privacy was implicated. Indeed, as demonstrated by the afore—emphasized portion of the transcript, he expressly disavowed any right to privacy argument. Rather, Sunderland argued that, despite the inability to succeed on privacy grounds in this jurisdiction, his right to the free exercise of religion required the prosecution to demonstrate a compelling state interest justifying a prohibition on the personal, home-use of marijuana. His focus on the home was meant only to distinguish other potential compelling state interests in preventing public harm that may flow from the use of marijuana outside the home. That argument differs from the argument Sunderland now seeks to assert on appeal—that his right to privacy encompasses the right to possess marijuana for religious purposes within the confines of his own home.

Therefore, inasmuch as Sunderland did not raise his right-to-privacy argument before the trial court, we do not address it. *See* HRS § 641-2 (Supp.2004) ("The appellate court . . . need not consider a point that was not presented in the trial court in an appro-

ling state interest in the case at bar.

priate manner."); *State v. Naeole,* 62 Haw. 563, 570, 617 P.2d 820, 826 (1980) (stating that it is well-established that "an issue raised for the first time on appeal will not be considered by the reviewing courts"); *State v. Kahalewai,* 56 Haw. 481, 491, 541 P.2d 1020, 1027 (1975) ("Generally, appellate courts will not consider questions which were not raised in the trial courts."); *Territory v. Kelley,* 38 Haw. 433, 435 (1949) ("[N]o question of constitutionality of the ordinance was ... called to the attention of the trial court and ruled upon, nor has any failure to rule been preserved by proper exceptions. No such question, therefore, can be properly raised for the first time in this court."); *Onaka,* 112 Hawai'i at 386, 146 P.3d at 101 ("[T]he rule in this jurisdiction ... prohibits an appellant from complaining for the first time on appeal of error to which he has acquiesced or to which he failed to object.") (Ellipses in original.) (Citations omitted.).

**B. Enforcement of HRS § 712–1249 Does Not Violate Sunderland's First Amendment Right to the Free Exercise of Religion.**

1. *The parties' arguments*

Sunderland's argument is thus reduced to his assertion that HRS § 712–1249 violates his right to the free exercise of religion guaranteed by the first amendment to the United States Constitution ("First Amendment"). Specifically, Sunderland refers this court to the analysis set forth by the United States Supreme Court in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). He asserts that under *Sherbert,* a governmental regulation will be scrutinized for a compelling interest where the party challenging the regulation's constitutionality has demonstrated that the regulation substantially burdens the party's religious practices. *See, e.g., Sherbert,* 374 U.S. at 406, 83 S.Ct. 1790 ("We must next consider whether some compelling state interest ... justifies the substantial infringement of appellant's First Amendment right."); *Wisconsin v. Yoder,* 406 U.S. 205, 214, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("[I]n order for Wisconsin to compel school attendance beyond the eighth grade against a claim that such attendance interferes with the practice of a legitimate religious belief, it must appear either that the State does not deny the free exercise of religious belief by its requirement, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause."). Sunderland points out that the district court presumed that the "religious aspect" was met and argues that the district court erroneously found that the state had a compelling interest in protecting minors from an environment where marijuana was used and encouraged. He contends that the record is devoid of any evidence that (1) the minors present had actual knowledge of the marijuana pipe, or (2) Sunderland encouraged the use of marijuana in any way.

The prosecution appears to agree with Sunderland that the *Sherbert/Yoder* analysis is appropriate. The prosecution concedes that the district court presumed that the "religious aspect" was satisfied, but defends the district court's finding of a compelling interest based upon the presence of the minors in close proximity to the marijuana pipe and the ease of access to it. The prosecution also asserts that in *Employment Div., Dep't of Human Res. of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), *superseded by* Religious Freedom Restoration Act ("RFRA") of 1993, 42 U.S.C. § 2000bb–1 (Supp. V 1993), *statute invalidated by City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the United States Supreme Court later "questioned" the propriety of a compelling interest analysis where the regulation in question (1) is of general applicability and (2) interferes with only the right to free exercise.

In reply, Sunderland asserts, *inter alia,* that the prosecution's reliance on *Smith* is misplaced. Sunderland argues that Congress enacted RFRA in an attempt to expressly supersede *Smith's* elimination of the compelling interest analysis in the context of generally applicable governmental regulation.

Contrary to Sunderland's assertions, however, *Smith* plainly controls.

### 2. *Employment Div., Dep't of Human Res. of Oregon v. Smith*

Ordinarily, when evaluating claims advanced under the free exercise clause of the First Amendment,

> it [is] necessary to examine whether or not the activity interfered with by the state was motivated by and rooted in a legitimate and sincerely held religious belief, whether or not the parties' free exercise of religion had been burdened by the regulation, the extent or impact of the regulation on the parties' religious practices, and whether or not the state had a compelling interest in the regulation which justified such a burden.

*Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 247, 953 P.2d 1315, 1345 (1998) (brackets in original) (citing *State ex rel. Minami v. Andrews,* 65 Haw. 289, 291, 651 P.2d 473, 474 (1982)); *accord Yoder,* 406 U.S. at 215–19, 92 S.Ct. 1526.

Nevertheless, in *Smith,* the United States Supreme Court distinguished governmental regulations of general applicability, holding that they are, under certain circumstances, immune from claims or defenses raised under the free exercise clause of the First Amendment. *See* discussion *infra.* Specifically, the *Smith* Court addressed the issue whether applicants may be denied unemployment compensation benefits based upon an Oregon statute disqualifying persons terminated for work-related misconduct, if the misconduct relied upon as the basis for disqualification is the religiously motivated ingestion of a substance prohibited by Oregon's controlled substance law.

The *Smith* Court first reiterated the well-settled notion that religious beliefs are beyond the reach of permissible governmental regulation, to the extent that government may neither compel nor preclude acquiescence in a particular belief as such. 494 U.S. at 877, 110 S.Ct. 1595 ("The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires."). Moreover, although attendant conduct does not enjoy the same degree of immunity, *id.* at 879, 110 S.Ct. 1595 ("Laws ... are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices . . . .") (Quotation marks omitted.) (Some ellipses in original and some added.) (Citing *Reynolds v. United States,* 98 U.S. 145, 166–67, 25 L.Ed. 244 (1878).), governmental regulation that targets the religious motivation behind such conduct would not pass constitutional muster. To wit, "a State would be prohibiting the free exercise of religion if it sought to ban such acts or abstentions only when they are engaged in for religious reasons, or only because of the religious belief that they display." *Id.* at 877, 110 S.Ct. 1595 (quotation marks omitted) (brackets removed).

Respondents, however, desired to expand the analysis one step further in seeking to preclude interference with religiously motivated conduct by a governmental regulation that does not target the religious motivation behind the conduct and that is concededly constitutional as applied to other persons seeking to engage in such conduct for non-religious reasons (*i.e.,* recreational purposes). *Id.* at 878, 110 S.Ct. 1595. The Court pointed out that previous opinions have upheld neutral and generally applicable laws against constitutional challenges based upon the free exercise clause of the First Amendment, citing such cases as *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878) (rejecting a claim that laws prohibiting polygamy could not be enforced against those whose religion commanded the practice), *Minersville School Dist. Bd. of Educ. v. Gobitis,* 310 U.S. 586, 594–95, 60 S.Ct. 1010, 84 L.Ed. 1375 (1940) ("Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs."), *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (holding that child labor laws may constitutionally be applied to preclude a mother from causing her children to distribute literature on the streets in spite of her religious motivation), *Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) (plurality opinion) (upholding Sunday-closing laws against the claim that such laws burdened the religious practices of those whose religions precluded

them from working on other days), *Gillette v. United States*, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (upholding conscription against a claim asserted by persons who opposed the war on religious grounds), *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (rejecting a claim for a religious exemption from social security taxes on the ground that the Amish faith prohibited participation in governmental support programs), and *Hernandez v. Commissioner*, 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) (rejecting a claim that the payment of income taxes burdened the free exercise of religion by making participation in religious activities more difficult). *Smith*, 494 U.S. at 879–80, 110 S.Ct. 1595.

The Court acknowledged that it had, in the past, upheld First Amendment challenges to the application of neutral and generally applicable laws to religiously motivated conduct, but only in such cases where the free exercise clause was implicated "in conjunction with other constitutional protections, such as freedom of speech and of the press ... or the right of parents ... to direct the education of their children...." *Id.* at 881, 110 S.Ct. 1595 (internal citations omitted). Thus, the Court concluded that *Reynolds* and its progeny "plainly controll[ed]" inasmuch as Oregon's controlled substances law was neutral, generally applicable, and did not implicate other core constitutional concerns. *Id.* at 882, 110 S.Ct. 1595.

Respondents also argued that "even though exemption from generally applicable criminal laws need not automatically be extended to religiously motivated actors, at least the claim for a religious exemption must be evaluated under the balancing test set forth in [*Sherbert* ]." *Id.* at 882–83, 110

S.Ct. 1595. However, the Court expressly rejected the application of the *Sherbert* test to "a generally applicable criminal law." *Id.* at 884, 110 S.Ct. 1595. The Court reasoned as follows:

The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, "cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." *Lyng* [*v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451[, 108 S.Ct. 1319, 99 L.Ed.2d 534] (1988) ]. To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is "compelling"—permitting him, by virtue of his beliefs, "to become a law unto himself," *Reynolds*[, 98 U.S. at 167]-contradicts both constitutional tradition and common sense.

*Id.* at 885, 110 S.Ct. 1595 (footnote omitted).[6]

Accordingly, the Court reversed the decision of the Oregon Supreme Court, concluding that "[b]ecause respondents' ingestion of peyote was prohibited under Oregon law, and because that prohibition is constitutional, Oregon may, consistent with the Free Exercise Clause, deny respondents unemployment compensation when their dismissal results from use of the drug." *Id.* at 890, 110 S.Ct. 1595.

### 3. *RFRA*

As mentioned by Sunderland, in 1993 Congress reacted by enacting RFRA, which was designed to supersede the *Smith* decision and reinvigorate the *Sherbert/Yoder* analysis.[7] *See* RFRA, Pub.L. No. 103–141, 107

---

**6.** We note, however, that *Smith* left open the possibility that the *Sherbert* test might nevertheless retain its vitality where statutory conditions called for "individualized governmental assessment of the reasons for the relevant conduct[,]" *id.* at 884, 110 S.Ct. 1595, thus creating a "mechanism for individualized exemptions." 494 U.S. at 883, 110 S.Ct. 1595 (Citing *Bowen v. Roy*, 476 U.S. 693, 708, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986)); *see also Sullivan*, 87 Hawai'i at 246 n. 31, 953 P.2d at 1344 n. 31 (stating that although *Smith* makes generally applicable governmental regulation immune from First Amendment attack, *Smith* carves an exception where the regu-

lation creates a system of individualized exemptions).

**7.** RFRA's stated purposes were to (1) "restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398[, 83 S.Ct. 1790, 10 L.Ed.2d 965] (1963) and *Wisconsin v. Yoder*, 406 U.S. 205[, 92 S.Ct. 1526, 32 L.Ed.2d 15] (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened[,]" and (2) "provide a claim or defense to persons whose religious exercise is substantially burdened by government." RFRA, 42

Stat. 1488 (1993). RFRA, 42 U.S.C. § 2000bb–1 set forth the following standard:

### (a) In general

Government shall not substantially burden a person's exercise of religion *even if the burden results from a rule of general applicability,* except as provided in subsection (b) of this section.

### (b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

(Emphasis added.) RFRA purported to make that framework applicable to "all Federal and State law, and the implementation of that law, whether statutory or otherwise...." RFRA, 42 U.S.C. § 2000bb–3(a).

However, this court has already taken note of the fact that the United States Supreme Court, in *Boerne,*[8] invalidated RFRA insofar as it "exceeded the enumerated powers of Congress and was, therefore, unconstitutional." *Sullivan,* 87 Hawai'i at 246, 953 P.2d at 1344. As a result, RFRA is inoperative as to the individual states. *See Hankins v. Lyght,* 441 F.3d 96, 105 (2d Cir.2006) ("The Supreme

Court held that the RFRA could not be enacted under Section 5 of the Fourteenth Amendment, which empowers Congress to enforce the Amendment's other provisions against the states."); *Spies v. Voinovich,* 173 F.3d 398, 403 (6th Cir.1999) ("[T]he Supreme Court has declared [RFRA] unconstitutional as applied to the states."); *Denson v. Marshall,* 44 F.Supp.2d 400, 402 (D.Mass.1999) ("The Supreme Court recently held RFRA unconstitutional as applied to state governments.").[9]

### 4. *HRS § 712–1249 is not subject to First Amendment attack.*

■ The present matter involves a state criminal statute prohibiting, *inter alia,* the possession of marijuana. Thus, *Smith,* not RFRA, controls.

According to *Smith,* a generally applicable law is not subject to First Amendment attack unless (1) it interferes with "the Free Exercise Clause in conjunction with other constitutional protections," or (2) it creates a mechanism that calls for "individualized governmental assessment of the reasons for the relevant conduct[ ]" (*i.e.,* individualized exemptions). *See* discussion *supra.*

Here, HRS § 712–1249 falls squarely within the scope of permissible governmental regulation, consonant with the rule enunciated in *Smith.* HRS § 712–1249 is a neutral

U.S.C. § 2000bb(b). Congress additionally found that:

(1) the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution;

(2) laws "neutral" toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise;

(3) governments should not substantially burden religious exercise without compelling justification;

(4) in *Employment Division v. Smith,* 494 U.S. 872[, 110 S.Ct. 1595, 108 L.Ed.2d 876] (1990), the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and

(5) the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests.

RFRA, 42 U.S.C. § 2000bb(a).

**8.** In *Boerne,* the Court stated that "RFRA was designed to control cases and controversies, such as the one before us; but as the provisions of the federal statute here invoked are beyond congressional authority, it is this Court's precedent, not RFRA, which must control." 521 U.S. at 536, 117 S.Ct. 2157.

**9.** RFRA remains effective, however, as applied to the federal government. *See Hankins,* 441 F.3d at 105–06 ("Since *Boerne,* '[e]very appellate court that has squarely addressed the question has held that the RFRA governs the activities of federal officers and agencies.") (Citing *O'Bryan v. Bureau of Prisons,* 349 F.3d 399, 401 (7th Cir.2003).) (Brackets in original.). In 2000, Congress amended RFRA, expressly limiting its applicability to "all Federal law, and the implementation of that law, whether statutory or otherwise...." Religious Land Use and Institutionalized Persons Act, Pub.L. No. 106–274, 114 Stat. 803, 806 (2000).

law of general applicability to the extent that it purports to prohibit, without exception, the possession of marijuana and any other substance defined as a "Schedule V substance" by HRS chapter 329. Additionally, the statute does not, in this case, also interfere with other constitutional rights, such as

> freedom of speech and of the press, *see Cantwell v. Connecticut,* 310 U.S., at 304–307[, 60 S.Ct. 900] (invalidating a licensing system for religious and charitable solicitations under which the administrator had discretion to deny a license to any cause he deemed nonreligious); *Murdock v. Pennsylvania,* 319 U.S. 105[, 63 S.Ct. 870, 87 L.Ed. 1292] (1943) (invalidating a flat tax on solicitation as applied to the dissemination of religious ideas); *Follett v. McCormick,* 321 U.S. 573[, 64 S.Ct. 717, 88 L.Ed. 938] (1944) (same), or the right of parents ... to direct the education of their children, *see Wisconsin v. Yodel[Yoder],* 406 U.S. 205[, 92 S.Ct. 1526, 32 L.Ed.2d 15] (1972) (invalidating compulsory school-attendance laws as applied to Amish parents who refused on religious grounds to send their children to school).

*Smith,* 494 U.S. at 881, 110 S.Ct. 1595 (footnote omitted). Thus, the present matter does not present the type of hybrid rights situation that *Smith* implies would merit a strict scrutiny analysis. Rather, we are faced with "a free exercise claim unconnected with any communicative activity or parental right." *Id.* at 882, 110 S.Ct. 1595. Moreover, HRS § 712–1249 does not create a mechanism for governmental assessment of individual applicants for exemptions. Rather, HRS § 712–1249 presents an across-the-board prohibition on specific conduct deemed to be socially harmful by the legislature.

10. We express no opinion as to what effect a properly preserved privacy argument may have had on the analysis, insofar as a privacy argument may present the type of hybrid rights scenario that *Smith* implies would merit a strict scrutiny analysis.

11. As a technical matter, we note that the district court erred by applying a compelling interest test. Nevertheless, our disagreement with the district court's methodology does not preclude our affirmance of its ultimate conclusion. *See Aluminum Shake Roofing, Inc. v. Hirayasu,* 110 Hawai'i 248, 256, 131 P.3d 1230, 1238 (2006)

Therefore, pursuant to *Smith,* we hold that, under the circumstances of the present case,[10] the free exercise clause of the First Amendment is not a viable defense to prosecution under HRS § 712–1249. *See* 494 U.S. at 884, 110 S.Ct. 1595 ("Even if we were inclined to breath into *Sherbert* some life beyond the unemployment compensation field, we would not apply it to require exemptions from a generally applicable criminal law."); *People v. Trippet,* 56 Cal.App.4th 1532, 1542, 66 Cal.Rptr.2d 559, 565 (Cal.Ct. App.1997) ("Under *Smith,* therefore, a state may enact and enforce generalized criminal sanctions for marijuana possession and transportation without running afoul of the Free Exercise clause of the First Amendment."); *U.S. v. Meyers,* 95 F.3d 1475, 1481 (10th Cir.1996) (rejecting a criminal defendant's claim that his prosecution for and conviction of the offenses of (1) conspiracy to possess with intent to distribute and to distribute marijuana, and (2) aiding and abetting possession with intent to distribute marijuana violated the free exercise clause of the First Amendment).

## IV. CONCLUSION

Based upon the foregoing analysis, we affirm the district court's June 23, 2004 judgment.[11]

Concurring and Dissenting Opinion by MOON, C.J.

I agree with the plurality's holding that Hawai'i Revised Statutes (HRS) § 712–1249 (1993),[1] pursuant to which defendant-appellant Joseph Sunderland was charged and convicted, does not offend the Free Exercise Clause of the first amendment to the United

("This court may affirm a judgment of the trial court on any ground in the record which supports affirmance.") (Quoting *Taylor–Rice v. State,* 91 Hawai'i 60, 73, 979 P.2d 1086, 1099 (1999).) (Quotation marks omitted.).

1. HRS § 712–1249 provides that "(1) A person commits the offense of promoting a detrimental drug in the third degree if the person knowingly possesses any marijuana or any Schedule V substance in any amount. (2) Promoting a detrimental drug in the third degree is a petty misdemeanor."

States Constitution.[2] Moreover, although I agree with the dissent that Sunderland sufficiently raised and argued his privacy issue, *i.e.*, that his conviction under HRS § 712–1249 impinges upon his right to privacy under article I, section 6 of the Hawai'i Constitution, quoted *infra*, I concur in the result reached by the plurality to affirm the District Court of the Third Circuit's June 23, 2004 judgment of conviction. I write separately to set forth the analysis upon which my concurrence in the result is based.

Briefly summarized, Sunderland argues that his right to possess and use marijuana *for religious purposes* **in his home** was protected from governmental intrusion by (1) the first amendment to the United States Constitution and (2) the right to privacy under article I, section 6 of the Hawai'i Constitution. As indicated above, I agree with the plurality that the plaintiff-appellee State of Hawai'i (the State) can regulate the use of marijuana, irrespective of Sunderland's claimed religious motivations. The plurality determined that, pursuant to *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), HRS § 712–1249 is a valid, religiously-neutral, and generally applicable criminal statute that prohibits conduct the State is free to regulate and, therefore, does not implicate the first amendment. *See* plurality opinion at 403–04, 168 P.3d at 533–34. Consequently, the issue turns upon whether the purported right to possess and use marijuana *in the home* is protected from government intrusion by the right to privacy under article I, section 6 of our constitution, as Sunderland contends.

Article I, section 6 provides that "[t]he right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right." This court has on numerous occasions examined the right to privacy clause in article I, section 6.[3] Of significant importance is the discussion in *State v. Mallan*, 86 Hawai'i 440, 950 P.2d 178 (1998), wherein this court was confronted with a similar issue as in this case— namely, "whether the express right to privacy located in article I, section 6 of the Hawai'i Constitution encompasses a right to possess and use marijuana *for recreational purposes.*" *Id.* at 441, 950 P.2d at 179 (emphasis added) (footnotes omitted).

In *Mallan*, the undisputed facts revealed that the defendant "was arrested in the parking lot of the Waikīkī Shell after Honolulu police officers, attracted by the odor of burning marijuana, found a partially burnt marijuana cigarette in [the defendant's] automobile." *Id.* at 442, 950 P.2d at 180. The defendant was charged with and convicted of the offense of promoting a detrimental drug in the third degree, in violation of HRS § 712–1249. *Id.* The defendant appealed, arguing that the possession of marijuana for personal use is protected by the right to privacy. *Id.* The Intermediate Court of Appeals, however, rejected the defendant's argument and affirmed his conviction. *Id.* at 442–43, 950 P.2d at 180–81. The defendant applied for a writ of certiorari, which this court granted. *Id.* at 443, 950 P.2d at 181.

In a 2–2–1 decision,[4] this court ultimately affirmed the defendant's conviction and con-

---

**2.** The first amendment, which is applicable to the states pursuant to the fourteenth amendment, *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

**3.** *See, e.g., State v. Romano,* 114 Hawai'i 1, 13–14, 155 P.3d 1102, 1114–15 (2007) (right to privacy does not extend to commercialized sexual activities); *Janra Enters., Inc. v. City & County of Honolulu,* 107 Hawai'i 314, 322, 113 P.3d 190, 198 (2005) (viewing adult materials in an enclosed panoram booth on commercial premises not a protectable privacy interest); *State v. Rothman,* 70 Haw. 546, 556, 779 P.2d 1, 7–8

(1989) (without a warrant, governmental seizure of telephone numbers of outgoing and incoming calls on private telephone line violates right to privacy); *State v. Kam,* 69 Haw. 483, 493–94, 748 P.2d 372, 378–79 (1988) (right to privacy includes possession of pornographic materials in one's own home); *State v. Mueller,* 66 Haw. 616, 629–30, 671 P.2d 1351, 1360 (1983) (no protected right to sexual activities for hire within the home).

**4.** Former Justice Ramil announced the opinion of the court, in which I joined. Former Justice Klein wrote separately, concurring in the result, in which Justice Nakayama joined. Justice Levinson issued a dissenting opinion.

cluded that the right to privacy does not include the right to possess and use marijuana for recreational purposes. *Id.* at 454, 950 P.2d at 192. In so concluding, the plurality explained the two distinct approaches that this court has utilized in interpreting article I, section 6:

> The first approach was applied by this court in *State v. Mueller*, 66 Haw. 616, 671 P.2d 1351 (1983), and later by the plurality in *Baehr v. Lewin*, 74 Haw. 530, 852 P.2d 44, *reconsideration granted in part*, 74 Haw. 650, 875 P.2d 225 (1993). **Under this approach, "only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty' are included in this guarantee of personal privacy."** *Mueller*, 66 Haw. at 628, 671 P.2d at 1355 (quoting *Roe v. Wade*, 410 U.S. 113, 152[, 93 S.Ct. 705, 35 L.Ed.2d 147] ... (1973)) (citations omitted). In determining which rights are fundamental, we must look
>
> > to the "traditions and [collective] conscience of our people" to determine whether a principle is "so rooted [there] ... as to be ranked as fundamental." ... The inquiry is whether a right involved "is of such a character that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions' ...."
>
> *Baehr*, 74 Haw. at 556, 852 P.2d at 57 (quoting *Griswold v. Connecticut*, 381 U.S. 479, 493[, 85 S.Ct. 1678, 14 L.Ed.2d 510] ... (1965) (Goldberg, J., concurring) (alterations in original)). *If a right is determined to be fundamental, it is subject to interference only when a compelling state interest is demonstrated. In the absence of a fundamental right, however, a statute need only satisfy the minimum rationality requirements of due process, i.e.,* it must have a *rational basis*.

*Id.* at 443, 950 P.2d at 181 (emphases added) (some internal quotation marks and some citations omitted).

> The second approach, adopted by this court in *State v. Kam*, 69 Haw. 483, 748 P.2d 372 (1988), is ultimately based on the United States Supreme Court's decision in *Stanley v. Georgia*, 394 U.S. 557[, 89 S.Ct. 1243, 22 L.Ed.2d 542] ... (1969).... [U]nder the *Stanley/Kam* approach, the right to privacy located in article I, section 6 encompasses the right to reach or view pornographic material in the privacy of one's home, as well as the correlative right to purchase such materials for use in one's home. The State cannot interfere with these rights unless a compelling state interest is demonstrated.
>
> It should be noted that there are two significant aspects of the *Stanley/Kam* approach. **First, the approach focuses squarely on the home as the situs of privacy.** Rather than focusing on intimate relationships as in the *Mueller/Baehr* approach, **the *Stanley/Kam* approach is tied to a specific place** ....
>
> **The second aspect of the *Stanley/Kam* approach is that freedom of speech and freedom of the press are strongly implicated** .... Although *Kam* subsequently grounded the right to read or view pornographic material within the home on article I, section 6, we cannot ignore the fact that freedom of speech and freedom of the press are essential factors in the *Stanley/Kam* analysis.

*Id.* at 444–45, 950 P.2d at 182–83 (underscored emphases in original) (bold emphases added) (citations omitted).

The plurality, however, determined that the *Stanley/Kam* approach did not apply in *Mallan* because

> [t]he record indicate[d] that [the defendant] was not **in the privacy of his own home** when he was arrested for possession of marijuana. Rather, he was sitting in an automobile parked in a public parking lot. Additionally, **this case involve[d] the possession of marijuana, not the possession of pornographic material.** Therefore, neither of the two elements required under the *Stanley/Kam* approach have been met, and the right to privacy does not apply on this basis.

*Id.* at 447, 950 P.2d at 185 (underscored emphasis in original) (bold emphases added). The plurality further declined to extend the *Stanley/Kam* approach beyond the home and beyond pornography. *Id.* Consequently, in

applying the *Mueller/Baehr* approach, the plurality held that "the right to possess and use marijuana cannot be considered a 'fundamental' right that is 'implicit in the concept of ordered liberty.'" *Id.* at 445, 950 P.2d at 183. The plurality reasoned that:

> We cannot say that smoking marijuana is a part of the "traditions and collective conscience of our people." In Hawai'i, possession of marijuana has been illegal since 1931. *See* 1931 Haw. Sess. L. Act 152, § 12, at 155–56. In the rest of the United States, the possession and/or use of marijuana, even in small quantities, is almost universally prohibited. Therefore, tradition appears to be in favor of the prohibition against possession and use of marijuana.... Furthermore, we cannot say that the principles of liberty and justice underlying our civil and political institutions are violated by marijuana possession laws. We dare say that liberty and justice can exist in spite of the prohibition against marijuana possession. Therefore, *the purported right to possess and use marijuana is not a fundamental right and a compelling state interest is not required.*

*Id.* at 445–46, 950 P.2d at 183–84 (footnote omitted) (emphasis added). In other words, the plurality believed that, under the circumstances in that case, the right to privacy was not implicated, and, as such, "HRS § 712–1249 need only survive the rational basis test." *Id.* at 446, 950 P.2d at 184. Ultimately, the plurality concluded that the defendant failed to satisfy his heavy burden of demonstrating that HRS § 712–1249 lacked *any* rational basis. *Id.* at 446–47, 950 P.2d at 184–85.

In this case, Sunderland contends that the right to privacy under article I, section 6 protects his right to possess and use marijuana in the privacy of his own home. In his view, "the instant case is readily distinguishable from *Mallan*" because Sunderland's "possession of marijuana *in his home* clearly implicated his privacy[.]" (Emphasis added.)

Preliminarily, I agree with Sunderland that *Mallan* is distinguishable from the instant case because the *Mallan* court was presented with the issue whether possession of marijuana for *recreational purposes* is violative of the privacy clause contained in article I, section 6 of the Hawai'i Constitution. Indeed, as that court specifically noted, "our holding is limited to the possession and use of marijuana *for recreational purposes,*" and, inasmuch as "other possible purposes are not before us, *we express no opinion, at this time, as to whether the right to privacy protects the possession and use of marijuana for other purposes.*" *Id.* at 454 n. 12, 950 P.2d at 191 n. 12 (emphasis added). The *Mallan* court, thus, left open the question whether possession and use of marijuana *in the home* is protected by the right to privacy. In examining this issue, I continue to adhere to the *Mueller/Baehr* approach, enunciated by the plurality in *Mallan.*[5]

As stated by the plurality in *Mallan*, "[t]he right to privacy is not absolute, and there must be *reasonable* limits placed on activities that test constitutional boundaries." *Id.* at 454, 950 P.2d at 192 (emphasis in original). Such right includes only those personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty." *Id.* at 445, 950 P.2d at 183 (internal quotation

---

5.  Sunderland contends that "the instant circumstances warrant application of the *Stanley/Kam* approach" because,

> [i]n contrast to *Mallan*, ... Sunderland's possession of marijuana in his home clearly implicates his privacy and [f]irst [a]mendment rights, albeit under the free exercise clause, not freedom of speech clause. Had these constitutional rights been in the balance, the *Mallan* court's analysis would have afforded [that defendant] the same protections afforded the defendants in *Stanley* and *Kam*, as is urged in the instant case.

As previously stated, the *Stanley/Kam* approach (1) "focuses squarely on the home as the situs of privacy[,]" and (2) strongly implicates freedom of speech and freedom of press, such as pornography and obscenity. *Mallan*, 86 Hawai'i at 444–45, 950 P.2d at 182–83 (emphasis omitted). However, similar to *Mallan*, this case does not satisfy the required elements to render the *Stanley/Kam* approach applicable. Although he met the first element because he was arrested for possession of marijuana while *in his own home*, Sunderland cannot meet the second element inasmuch as the present case, like *Mallan*, "involves the possession of marijuana, not the possession of pornographic material." *Id.* at 447, 950 P.2d at 185. Moreover, because the *Mallan* court declined to extend the *Stanley/Kam* approach beyond pornography, I decline to do so as well.

marks omitted). In *Mallan,* the plurality announced that there is no fundamental right to possess and use marijuana, reasoning that

> tradition appears to be in favor of the prohibition against possession and use of marijuana.... [W]e cannot say that the principles of liberty and justice underlying our civil and political institutions are violated by marijuana possession laws. We dare say that liberty and justice can exist in spite of the prohibition against marijuana possession.

*Id.* at 445–46, 950 P.2d at 183–84. Consequently, the inquiry is whether the purported right to possess and use marijuana, which is not a fundamental right, would transform into such a right when the activity is conducted *in the home.* I conclude that it does not.

In examining the framers' intent in adopting article I, section 6 of the Hawai'i Constitution, the *Mallan* plurality observed that:

> *Nothing in the committee reports indicates that the delegates intended such a drastic step as the decriminalization of drugs for personal consumption.* If the delegates had intended such a result, surely they would have placed an explicit reference in the committee reports. Instead, the committee reports contain no mention of the legalization of illicit drugs.
>
> A close reading of the convention debates reveals a sincere concern, perhaps even a strong fear, among the delegates that an express right to privacy might further impede the battle against illegal drugs.
>
> > Now what alarms me is that by putting in the language as it is right now—that the right to privacy "is recognized and shall not be infringed without the showing of a compelling state interest"—goes beyond our present statutory law and would in fact hinder law enforcement. The result would then be that it would be virtually impossible, as I can see it, to stop criminal activity conducted in what can be considered a dwelling.
> >
> > 2 [*Proceedings of the Constitutional Convention of Hawai'i of 1978* (2 Proceedings)] at 629–30 (Delegate [John E.] Tam). In response, Delegate [Akira] Hino reassured Delegate Tam that the privacy pro-

vision *was not intended to hinder law enforcement or protect criminals.*

> > I'd like to allay the fears of law enforcement officials and people connected with law enforcement that this provision will make it a little more difficult for the law to be enforced. This factor was recognized during our committee's deliberations. We proposed that this privacy provision be put in a separate section, of and by itself, to show that *it was not the intent of the committee to upset any kind of precedents on criminal justice or law enforcement procedures; that this privacy provision would refer to and protect the rights of noncriminals.*
> >
> > *Id.* at 630 (Delegate Hino) (emphasis added).

*Id.* at 448–49, 950 P.2d at 186–87 (original ellipses and brackets omitted) (some emphases in original and some added). The *Mallan* plurality, relying upon numerous concerns raised by the delegates, concluded that

> the delegates who spoke in favor of the privacy provision did so based on their understanding that the right to privacy would neither hinder law enforcement nor further criminal activity. *Inasmuch as we are convinced that the delegates who adopted the privacy provision did not intend to legalize contraband drugs, we also believe that the voters who later ratified the privacy provision did not intend such a result.*

*Id.* at 450, 950 P.2d at 188 (emphasis added). Indeed, the *Mallan* concurrence (*i.e.,* Justices Klein and Nakayama) was also "not convinced that it was the intent of the framers of article I, section 6 that the right to privacy envisioned by them would protect an individual from criminal prosecution for the possession and use of marijuana, or any contraband drug bought, sold, or used privately." *Id.* at 510, 950 P.2d at 248 (emphasis omitted). In other words, to conclude that the purported right to possess and use marijuana in the home is "fundamental" or "implicit in the concept of ordered liberty," *id.* at 445, 950 P.2d at 183 (internal quotation marks omitted), would contravene the intent of the framers "not ... to hinder law en-

forcement or protect criminals," *id.* at 449, 950 P.2d at 187 (emphasis omitted), when they adopted article I, section 6.[6]

Because there is no fundamental right to the private use and possession of marijuana, the right to privacy contained in article I, section 6 of the Hawai'i Constitution is not implicated; thus, a compelling state interest is not required to be shown.[7] Rather, HRS § 712–1249 need only survive the rational basis test set forth in *Mallan*. *Id.* at 443, 950 P.2d at 181 ("In the absence of a fundamental right, . . . a statute need only satisfy the minimum rationality requirements of due process, *i.e.*, it must have a rational basis." (Internal quotation marks and citation omitted.)).

"Under the rational basis test, [this court] inquire[s] as to whether a statute rationally furthers a legitimate state interest. [The] inquiry seeks only to determine whether any reasonable justification can be found for the legislative enactment." *Id.* at 446, 950 P.2d at 184 (ellipsis and citation omitted). Moreover, this court

> has long held that: (1) legislative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable.

*Id.* (internal quotation marks and citations omitted). Consequently, Sunderland bears "the heavy burden of demonstrating that HRS § 712–1249 lacks *any* rational basis." *Id.* (emphasis in original).

Rather than advancing arguments that HRS § 712–1249 is not supported by any rational basis, Sunderland solely takes the position that a compelling state interest test applies and argues that "the government interest must be accomplished through the least restrictive means of limiting the reach of the government to conduct that affects the public, *i.e.*, marijuana possession, use or trafficking which occurs outside of the privacy of the home." (Emphasis omitted.) However, as indicated above, the facts of the instant case do not implicate the right to privacy and, thus, only a rational basis test is applicable. Consequently, on this basis alone, Sunderland fails to satisfy his burden.

---

6. Although recognizing that the *Mallan* court refused to follow the Alaska case of *Ravin v. State*, 537 P.2d 494 (Alaska 1975), wherein the Alaska Supreme Court held that Alaska's state constitutional right to privacy precluded prosecution of home use and possession of marijuana, Sunderland nevertheless appears to urge this court to follow the *Ravin* court. In *Mallan*, the plurality rejected the defendant's suggestion to adopt the *Ravin* analysis, stating that:

> *Ravin* is a case from another jurisdiction and is in no sense binding upon us. Furthermore, *Ravin* was based, at least in part, on social and cultural factors unique to Alaska. . . . [A]s far as we can determine, Alaska stands alone in extending the right to privacy to include possession and use of marijuana. Other states that have considered the issue uniformly conclude that possession and use of marijuana is not protected.

*Mallan*, 86 Hawai'i at 450, 950 P.2d at 188 (citations omitted). I see no reason to deviate from the *Mallan* court's reasoning and, therefore, would reject Sunderland's argument.

7. The dissent criticizes my approach in analyzing privacy claims under article I, section 6 of the Hawai'i Constitution, *i.e.*, the application of the *Mueller/Baehr* versus the *Stanley/Kam* approach. *See* Dissenting Op. at 416, 168 P.3d at 545–46 n. 1. In support of its position, the dis-

sent relies upon "Justice Klein's separate concurrence" in *Mallan*, which, in the dissent's view, "refuted" the *Mallan* plurality's approach—"that the right to privacy, as expressly codified in article I, section 6 of the Hawai'i Constitution, materializes only in tandem with some separate and distinct constitutional guarantee that serves as the substantive basis or catalyst of the privacy right." *Id.* Indeed, Justice Klein (joined by Justice Nakayama) opined, as the dissent here does, that "the right of privacy embodied in article I, section 6 is a *fundamental right in and of itself.*" *Mallan*, 86 Hawai'i at 510, 950 P.2d at 248 (emphasis in original). Justice Klein believed that the approach should be "to analyze the conduct itself and the circumstances under which it is prohibited to determine whether it is reasonable to give the conduct constitutional protection." *Id.* As previously stated and demonstrated *supra*, I continue to adhere to the approach taken by the *Mallan* plurality. Nonetheless, I note that Justice Klein did not agree with the dissent (Levinson, J.) in that case that "Hawaii's right to privacy is so broad that it protects the use and possession of marijuana for recreational purposes." *Id.* As Justice Klein aptly indicated, "[i]n effect, the dissent's reasoning decriminalizes the use and possession of virtually all contraband drugs used within the home or wherever a person senses being 'in private.' " *Id.*

Furthermore, the stipulated evidence in this case would not have overcome the presumption of constitutionality to conclude that HRS § 712–1249 is unsupported by any rational basis. At trial, the parties stipulated into evidence transcripts from other trial proceedings,[8] wherein various experts proffered testimony relating to the effects of marijuana. The experts essentially testified that there remains a controversy as to whether marijuana has harmful effects and indicated that it has yet to be determined conclusively what harmful effects marijuana has on the human body.[9] Indeed, as the State observed and I agree, "[t]he stipulated witness testimonies ... support the conclusion that the medical world has not yet reached a consensus on the long-term effects of marijuana use." For example, Dr. John Paul Morgan, a physician and pharmacologist, who was qualified as an expert in the area of pharmacology and toxicology, as well as drug abuse, testified that

> marijuana, like most psychoactive preparations, has a variety of effects on humans. Like all medications, it has some toxic effects. It has some adverse effects. But[,] in general, it is my belief, and I have published and widely talked about that, that marijuana is a psychoactive drug with a surprisingly wide margin of safety.

> That means that other than extreme doses, most humans can use it without harm to their bodies, without biological harm.... [B]asically, I believe marijuana is a surprisingly safe medicinal—surprisingly safe, psychoactive preparation that may be used by humans under a wide variety of circumstances for a wide variety

of uses without significant import and harm in toxicity.

Dr. Morgan, however, agreed that, although there are experts who would agree with his position, there are also experts who would disagree. Dr. Morgan could only relate that there is no convincing medical evidence that marijuana causes "amotivational syndrome" where a person loses interest in social, academic or work pursuits, and there is no data or empirical findings that marijuana produces addictive behavior in other than a minuscule proportion of users. Further, although he responded in the negative when asked whether the use of marijuana caused brain damage, Dr. Morgan testified that,

> [t]here are, in reality, no human studies of marijuana users who have died and whose brains have been examined so that one could solve the problem that way, but there have been a number of studies over the years which people have felt may be reflections of brain damage.

Dr. Morgan also indicated that,

> heavy marijuana smoking over a lengthy period of time is associated with lung pathology and lung disease.

> . . . .

> [Although] it is clear that marijuana smoking in heavy doses may be associated with pulmonary disease[, i]t is not clear how severe that pulmonary disease is, and it does not appear to be associated with emphysema.

> . . . .

> In fact, at this moment, there are no proved cases of pulmonary cancer related to marijuana smoking. There are cases reports that say maybe these men had

8. The parties specifically agreed to incorporate expert testimony from two unrelated cases—*State v. Shields*, No. 21753, and *State v. Adler*, No. 25224—, which cases dealt with whether the marijuana statute unconstitutionally burden the defendant's free exercise of religion. In *Shields*, this court summarily affirmed the defendant's conviction. *See* 90 Hawai'i 476, 979 P.2d 72 (1999). In *Adler*, this court issued a published opinion, holding, *inter alia*, that the defendant failed to establish that HRS § 712–1249.5 (1993) (governing commercial promotion of marijuana in the second degree) unconstitutionally burdened the free exercise of his religion. 108 Hawai'i 169, 178, 118 P.3d 652, 661 (2005).

9. Testimonies of a total of nine experts from two separate trials were admitted at Sunderland's trial. Specifically, from the *Shields* trial, testimonies of Dr. John Paul Morgan, Dr. Blase Harris, Dr. Willis Butler, Dr. Eric A. Voth, Donald Barry Lupien (a therapist), Earl Mick Mollica (expert in the training of law enforcement of laws dealing with narcotics), and Tanya Jean Canoso (a clinical psychologist and substance abuse counselor) were admitted. From the *Adler* trial, testimonies of Canoso, Keith Kamita (administrator of the state's narcotic's enforcement division of public safety), and Dr. William Wenner were admitted.

cancer because of their marijuana smoking, but most of them were tobacco smokers as well. So at moment, there is no proof that marijuana causes pulmonary cancer. It may. I would not want to say it won't or it never will, but at moment, there's no proof.

Similarly, Dr. Blase Harris, a psychiatrist who was qualified as an expert in his field, acknowledged that, in his practice, he has never seen a case of psychological or physical addiction to marijuana. He believed that amotivational syndrome is a theoretical construct which is not scientifically proven and there is no evidence that marijuana causes amotivational syndrome. Dr. Harris also stated that, "there is no evidence that marijuana, in any scientifically controlled study, causes harm. There are theoretical constructs, but no scientific proof." *See also* Dr. Butler's testimony, stating that there is "no conclusive proof" as to the harmful effects of marijuana.

Based upon the experts' testimonies and the fact that "a genuine controversy exists and scientists have not reached a consensus as to the harmful effects of marijuana," I cannot say that Sunderland has sufficiently rebutted the presumption of constitutionality nor proven that HRS § 712–1249 is unsupported by any rational basis. *Mallan*, 86 Hawai'i at 447, 950 P.2d at 185 (also concluding that, based upon the experts' testimonies, the defendant has not overcome the presumption of constitutionality); *see also State v. Baker*, 56 Haw. 271, 276, 535 P.2d 1394, 1397 (1975) ("It is well settled that when a substance has been proscribed as harmful, the presumption of constitutionality applies although there are conflicting views as to its harmful effects.").

Moreover, it is noteworthy that controlled substances are categorized into five schedules based upon their potential dangerousness. *See* HRS § 329–11 (Supp.2006) ("In making a determination regarding a substance, the department of public safety shall assess the degree of danger or probable danger of the substance[.]"). Marijuana is listed in HRS § 329–14(d)(20) (Supp.2006) as a Schedule I controlled substance, which indicates "the highest degree of danger or probable danger." HRS § 329–13 (1993). Through its inclusion of marijuana as a prohibited controlled substance and its promulgation of the statute at issue—HRS § 712–1249—, the legislature clearly has declared that the possession and use of marijuana should be subjected to criminal penalties. Such legislation reflects a legislative judgment that prohibition of activities relating to marijuana is a substantial interest of the State. Preservation of the public health and safety is the obvious purpose underlying the State's drug laws.[10] I, therefore, believe that this court should not substitute its judgment for that of the legislature where, as here, the challenged legislation reflects the legislature's clear intent to control a substance on a rational basis. *See State v. Cotton*, 55 Haw. 148, 151, 516 P.2d 715, 718 (1973) (stating that, "enactment of laws is the prerogative of the legislature and it is not for the judiciary to second-guess the legislature or substitute its judgment for that of the legislature").

Based upon the foregoing, I would affirm, as the plurality does, the district court's June 23, 2004 judgment of conviction against Sunderland.

Concurring and Dissenting Opinion by ACOBA, J.

I agree with the dissent that Defendant–Appellant Joseph Sunderland (Appellant) sufficiently raised the argument that enforcement of Hawai'i Revised Statutes (HRS) § 712–1249 (1993) violates his right to privacy guaranteed by article I, section 6 of the

---

**10.** As the State pointed out, in this case,

> minors were present. The fact that they were asleep when Sunderland was smoking is of minimal significance. The pipe was left in a place where they would have had access to it, the location of the pipe within the house suggests that the smoking was within the house, where the minors although asleep were undoubtedly still breathing.

> The legislature has enacted any number of statutes to protect the health and welfare of minors, including provisions disallowing sales of cigarettes to minors, HRS § 328K–7 and HRS [§ ]709–908; and perhaps even more pertinent, HRS[§ ] 134–10.5, a law that makes it a crime for adults not to secure firearms in a home where minors are present.

Hawai'i Constitution. Dissenting opinion at 405, 168 P.3d at 535. The points of error section of Appellant's opening brief plainly states that "the right to privacy under the Hawaii State [C]onstitution *also* protects [Appellant's] right to possess marijuana for religious purposes *in his home.*" (Emphases added.)

I also note that the plurality's seeming assertion that a plain error argument must be raised in the trial court for this court to consider an issue, *see* plurality opinion at 407, 168 P.3d at 537, is wrong and antithetical to our rules and plain error doctrine. It is well-settled that plain error may be noticed even if a defendant did not assert a plain error argument on appeal. *See* Hawai'i Rules of Penal Procedure Rule 52(b) (2007) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); Hawai'i Rules of Appellate Procedure Rule 28(b)(4) (2007) (*An "appellate court, at its option, may notice a plain error not presented.*" (Emphasis added.)). Recently, in *State v. Ruggiero*, 114 Hawai'i 227, 241, 160 P.3d 703, 717 (2007), all members of this court, including the plurality, agreed to note plain error although the error was not brought to the attention of the trial court or this court. *See also In re Doe*, 102 Hawai'i 75, 87, 73 P.3d 29, 41 (2003); *State v. McGriff*, 76 Hawai'i 148, 155, 871 P.2d 782, 789 (1994) (citing *State v. Grindles*, 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989) (stating that "the power to *sua sponte* notice 'plain errors or defects affecting substantial rights' clearly resides in this court" (quoting *State v. Hernandez*, 61 Haw. 475, 482, 605 P.2d 75, 79 (1980)))).

The plurality's quote regarding Appellant's reference in argument to the court to "that case in Hawaii" involving the right of privacy presumably refers to *State v. Mallan*, 86 Hawai'i 440, 950 P.2d 178 (1998). In that case, the plurality held that "the right to privacy in article I, section 6 of the Hawai'i Constitution does not encompass a right to possess and use marijuana for recreational purposes[,]" *id.* at 454, 950 P.2d at 192, by the defendant in a parking lot. But the *Mallan* plurality limited its holding "to the possession and use of marijuana for recreational purposes" and stated that "[i]nasmuch as other possible purposes are not before us, we express no opinion, at this time, as to whether the right to privacy protects the possession and use of marijuana for other purposes." *Id.* at 454 n. 12, 950 P.2d at 192 n. 12.

*Mallan* thus left open the question of privacy as it related to use of marijuana in non-public places and for non-recreational purposes. Accordingly, the fact that Appellant's "argument [before the court] differs from the argument [he] now seeks to assert on appeal—that his right to privacy encompasses the right to possess marijuana for religious purposes within the confines of his own home[,]" plurality opinion at 399, 168 P.3d at 529, is not foreclosed by *Mallan* or, inferentially, by his reference to *Mallan*. Appellant's allusion to *Mallan* before the trial court, then, does not preclude recognition of plain error on the ground he argues on appeal either as a matter of the factual circumstances on this record, or as a matter of well established case law and our appellate rules.

However, under the circumstances of this case, I concur in the result. The plurality opinion in *State v. Kantner*, 53 Haw. 327, 493 P.2d 306 (1972), upheld general regulation of marijuana use "absent an intimate connection with a 'preferred freedom[,]'" as constitutional. *Id.* at 333, 493 P.2d at 310 (Richardson, C.J., announcing the judgment of the court).[1] Relatedly, the plurality relies on

---

1. It should be noted that Justice Levinson disagrees that this was the holding of the plurality. Dissenting opinion at 414–16, 168 P.3d at 544–46 n. 1 ("I disagree with Justice Acoba that '[t]he plurality opinion' in [*Kantner*], 53 Haw. at 333, 493 P.2d [at 310 (Richardson, C.J., announcing the judgment of the court),] upheld general regulation of marijuana use[,] 'absent an intimate connection' with a 'preferred freedom[,]' as constitutional.'"). However, to be clear, in *Kantner* this court upheld "the constitutionality of the statutory scheme for the control of the possession of marihuana ..., which served as the basis for parole revocation of [the petitioners] and upon which [the] defendant was convicted." 53 Haw. at 334, 493 P.2d at 307. Justice Abe in his concurrence joined Chief Justice Richardson and Justice Marumoto in affirming the judgment of the trial court. *Id.* at 339, 493 P.2d at 313 (Abe, J., concurring).

established law in *Employment Div., Dep't. of Human Res. of Oregon v. Smith,* 494 U.S. 872, 885, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), wherein the U.S. Supreme Court noted that "[t]o make an individual's obligation to obey" a generally applicable law "contingent upon the law's coincidence with his religious beliefs, except where the State's interest is 'compelling'—permitting him, by virtue of his beliefs, 'to become a law unto himself,' *Reynolds v. United States,* 98 U.S. [145,] 167[, 25 L.Ed. 244] [ (1878) ]—contradicts both constitutional tradition and common sense."

Later, in *Mallan,* as noted above, the plurality excluded the "use of marijuana *for recreational purposes*[,]" 86 Hawai'i at 454 n. 12, 950 P.2d at 192 n. 12 (emphasis in original), in a public place from the scope of the right to privacy in article I, section 6 of the Hawai'i Constitution, despite the matters cited by the dissent herein regarding *Kantner* and *Mallan.* In any event, under the specific facts and circumstances of this case, it is debatable whether it has been demonstrated that the conduct here entails "an intimate connection with a 'preferred freedom.' " [2] *Kantner,* 53 Haw. at 333, 493 P.2d at 310.

### Dissenting Opinion by LEVINSON, J.

I dissent.

■ I agree with the plurality's characterization of the defendant-appellant Joseph Sunderland's point of error on appeal as being that "his possession of marijuana at home and for religious purposes was protected by the free exercise clause of the first

amendment to the United States Constitution, as well as his right to privacy under article I, section 6 of the Hawai'i Constitution." Plurality opinion at 397–98, 168 P.3d at 527–28. I disagree, however, that "Sunderland [f]ailed to [p]reserve [h]is [r]ight to [p]rivacy [a]rgument on [a]ppeal" on the basis that the argument that he advanced in the circuit court "differ[ed] from the argument Sunderland now seeks to assert on appeal." *Id.* at 398, 399, 168 P.3d at 528, 529.

The "statement of points of error" section of Sunderland's opening brief includes the following:

... [T]he lower court failed to consider the extent to which the government's interest in regulating Mr. Sunderland's religious practices was further attenuated by his right to privacy. As discussed below at Argument I.B., when First Amendment pursuits are conducted in the home, the right to privacy provides an additional layer of protection from governmental intrusion. *Stanley v. Georgia,* 394 U.S. 557[, 89 S.Ct. 1243, 22 L.Ed.2d 542] ... (1988). In *Stanley v. Georgia,* the United States Supreme Court examined the extent to which the state of Georgia could enforce statutes outlawing obscenity. The court acknowledged that the government had a legitimate interest in regulating obscenity for the protection of the general public welfare. However, when it came to possessing obscene materials in the privacy of the home, the government's interest did not justify the "invasion of personal liberties guaranteed by the First and Fourteenth

Although Justice Abe did "not agree with Chief Justice Richardson that one does not enjoy the fundamental constitutional right to smoke marijuana[,]" he concluded that because "the appellants have conceded both in the trial court and on appeal that the State may regulate the use of marijuana under its police power[,]" *it would be unreasonable to conclude that the State failed to meet its burden of proof "that the use of marijuana is not only harmful to the user but also to the general public before it can prohibit its use." Id.* at 338–39, 493 P.2d at 313 (Abe, J., concurring) (emphasis added).

2. The facts here indicate that the officer involved "observed three girls sleeping on a futon bed in the living room. [The officer] subsequently observed a six-inch marijuana pipe on the kitchen

table." Whether a compelling state interest would encompass a situation where the protection of minors would be paramount is an underlying question. *See State v. Kam,* 69 Haw. 483, 496 n. 2, 748 P.2d 372, 380 n. 2 (1988) (concluding that "[w]e do not determine whether a compelling government interest justifies the ban on certain types of obscenity" in situations involving the sale of pornography to minors); *but see Ashcroft v. ACLU,* 542 U.S. 656, 659–60, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004) (affirming preliminary injunction against a "statute enacted ... to protect minors from exposure to sexually explicit materials on the Internet, the Child Online Protection Act ..., 112 Stat. 2681–736, codified at 47 U.S.C. § 231," because the statute likely violated the First Amendment).

Amendments. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home." 394 U.S. at 565[, 89 S.Ct. 1243]. . . .

By analogy, the free exercise clause of the First Amendment must also give greater protection to Mr. Sunderland's practice of his religion in his home then [sic] in public places. The stated governmental interests in prohibiting the use of marijuana for the protection of the welfare of the general public are similar to those regarding obscenity. However, as the United States Supreme Court held in *Stanley,* whatever the governmental interests for other laws regulating obscenity, they do not justify reaching into the privacy of an individual's own home. 394 U.S. at 565[, 89 S.Ct. 1243]. . . . Similarly, in this case, the government's enforcement cannot reach into Mr. Sunderland's home where the use of marijuana is tied to his fundamental right of free exercise of his religion.

Finally, the right to privacy under the Hawai['i] State constitution also protects Mr. Sunderland's right to possess marijuana for religious purposes in his home. Defense counsel framed the constitutional question as a blend of freedom of religion and privacy interests: "This case is about someone in his own home possessing a very small amount of marijuana for religious purposes. That is the only issue in this case." The lower court clearly was aware that Mr. Sunderland's conduct in his home implicated his privacy interests. ["You're saying that there is no compelling state interest in preventing him from using or possessing marijuana for religious purposes in the privacy of his own home."] However, the lower court's ruling merely focused on the [question] whether the state had shown a compelling state interest without engaging in any further analysis.

Defense counsel mistakenly believed that the issue of whether the Hawai['i] state constitution protected marijuana use in the home for religious purposes had been answered in the negative: "They

have done that case in Hawai['i]. And on a privacy level, you're not allowed to have marijuana. They have raised that." Defense counsel was apparently referring to *State v. Mallan,* 8[6] Haw[ai'i] 440, 950 P.2d 178 (1998), wherein the Hawai['i] Supreme court held that the state constitutional right to privacy does not extend to possession of use of marijuana in a public place for recreational purposes. *Mallan* expressly left open the question of whether the right to privacy protects the possession or use of marijuana for other purposes. 86 Hawai'i at 454 [n.12], 950 P.2d at 192 [n.]12. As discussed below at Argument I.C., *Mallan* actually provides grounds for concluding that the right to privacy protects possession of marijuana in the home when its use is connected to the exercise of a fundamental right such as exercise of religious freedom. Thus, Article I, Section 6 of the Hawai['i] Constitution provides separate grounds for granting Mr. Sunderland's motion. The lower court erred in failing to so conclude, and in . . . convicting Mr. Sunderland as charged.

Opening brief at 11–13. (Some brackets added and some in original.) (Record citations omitted.)

Given the foregoing, it is apparent to me that the plurality's view of what is necessary to preserve an issue for appellate review is unduly cramped, although the plurality's unwillingness to reach the issue on the merits may not be such a bad thing, considering the state of lockdown in which the right to privacy, as supposedly protected by article I, section 6 of the Hawai'i Constitution, is kept these days. The fact is that, "[a]lthough [Sunderland] did not explicitly phrase [his conviction, despite its article I, section 6 implications,] in terms of *plain* error, he *did* raise the issue and argued it as error." *State v. Frisbee,* 114 Hawai'i 76, 84, 156 P.3d 1182, 1190 (2007) (Moon, C.J., concurring) (emphases in original). I would therefore reach the privacy issue that Sunderland raises on appeal and, based upon the analysis set forth in my dissenting opinion in *Mallan,* 86 Hawai'i at 454–509, 950 P.2d at 192–247,[1] re-

---

1. I disagree with Justice Acoba that "[t]he plural-

ity opinion in *State v. Kantner,* 53 Haw. 327,

[333,] 493 P.2d 306[, 310] (1972), upheld general regulation of marijuana use[,] 'absent an intimate connection with a "preferred freedom[,]" ' as constitutional." Justice Acoba's concurring and dissenting opinion at 412, 168 P.3d at 542 (some brackets added and some in original). Rather, the *Kantner* plurality—Chief Justice Richardson and Justice Marumoto—"doubt[ed] ... that use of a mind-altering drug, absent an intimate connection with a 'preferred freedom', requires the standard of review which appellants suggest." 53 Haw. at 333, 493 P.2d at 310. Justice Abe did "not agree ... that one does not enjoy the fundamental constitutional right to smoke marijuana." 53 Haw. at 336, 493 P.2d at 312 (Abe, J., concurring). Justice Levinson wrote that

> [t]he crucial issue in this case is whether a person has a constitutionally protected right purposely to induce in himself, in private, a mild hallucinatory mental condition through the use of marihuana. I believe that there is such a right and that it is founded upon the constitutional rights to personal autonomy and privacy, guaranteed by ... the Hawaii Constitution as well as by the due process clause of the fourteenth amendment of the Federal Constitution. I believe that HRS § 329-5 (Supp. 1971) [*i.e.*, the statutory predecessor of HRS § 712-1249] violates both constitutions because it unreasonably infringes upon these rights....

*Id.* at 339, 493 P.2d at 313 (Levinson, J., dissenting). And in Justice Kobayashi's view,

> our present method of regulating marijuana—inclusion of marijuana within the classification of criminally proscribed narcotics—is unreasonable and unconstitutional in violation of the due process and equal protection clauses of the Fourteenth Amendment.
>
> ... Even if I felt that the legislature's present treatment of marijuana achieved a noble end, which I do not, HRS § 329-5, which proscribes the use of narcotics and classifies marijuana as a narcotic, must be regarded as an unconstitutionally arbitrary legislative declaration tantamount to an abuse of the state's police-power.

*Id.* at 347-48, 493 P.2d at 318 (Kobayashi, J., dissenting).

Indeed, although he disagreed "that Hawai'i's right to privacy is so broad that it protects the use and possession of marijuana for recreational purposes," Justice Klein (with whom Justice Nakayama joined) concurring separately in *Mallan*, expressed his unambiguous view that the only "preferred freedom" implicated in a right-to-privacy claim is the right to privacy itself, as recently enshrined in article I, section 6 of the Hawai'i Constitution:

> This state's constitution was amended after the 1978 Constitutional Convention by adding the specific right to privacy provision set forth in article I, section 6. There is no question that the right to privacy embodied in article I, section 6, is a *fundamental right in and of itself*. Any infringement of the right to privacy must be subjected to the compelling state interest test. Thus, the *only* analysis this court need utilize when testing a right to privacy claim such as Mallan's is whether the conduct prohibited by law is entitled to protection under article I, section 6....
>
> ... The only approach that makes sense is to analyze the conduct itself and the circumstances under which it is prohibited to determine whether it is reasonable to give the conduct constitutional protection.

86 Hawai'i at 510, 950 P.2d at 248 (Klein, J., concurring, joined by Nakayama, J.) (emphases in original).

The "core question" at issue in *Mallan* was

> whether, as a matter of constitutional law, the police power of the state extends to criminalizing mere possession of marijuana for personal use, as proscribed by Hawai'i Revised Statutes (HRS) § 712-1249 (1993). Over twenty-five [now thirty-five] years ago, in ... *Kantner* ..., three justices of his court—a majority—answered the same question, as it pertained to the predecessor statute, with an emphatic and unequivocal "No." For purposes of the question before us, the only constitutionally significant event to occur since *Kantner* has been the promulgation of article I, section 6 of the Hawai'i Constitution (1978), which has given an express and more expansive local home to the proposition—theretofore residing, for the most part, within the "penumbra" emanating from the federal Bill of Rights—that "[t]he right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest."

*Id.* at 454-55, 950 P.2d at 192-93 (Levinson, J., dissenting) (footnotes omitted). *Kantner* spawned four separate opinions—a plurality opinion, a concurrence, and two dissents.

> The overarching irony of the *Kantner* quaternary is that it was only because the Richardson/Marumoto plurality and the Abe concurring opinion took the position that the appellants had conceded *arguendo* that the state's police power extended, *per se*, to the criminalization of marijuana possession that the *Kantner* appellants lost their appeal and thereby changed constitutional history. In light of the combined positions of Justices Abe, Levinson, and Kobayashi, ... it is apparent that, but for the appellants' alleged concession, HRS § 329-5 would have been struck down as unconstitutional by this court, HRS § 712-1249, as subsequently enacted in 1972, would not have been applied to the possession of marijuana, and Mallan would have had the right to be let alone ... and to tell the state to mind its own business.

*Id.* at 474, 950 P.2d at 212 (Levinson, J., dissenting.)

Chief Justice Moon's assertion, set forth at 409, 168 P.3d at 539 of his concurring and dissenting opinion, that "[b]ecause there is no fundamental right to the private use and possession of marijuana, the right to privacy contained in article I, section 6 of the Hawai'i Constitution

verse the district court's judgment of conviction.

is not implicated" perpetuates the *Mallan* plurality's misapprehension, described and refuted in Justice Klein's separate concurrence set forth *supra*, that the right to privacy, as expressly codified in article I, section 6 of the Hawai'i Constitution, materializes only in tandem with some separate and distinct constitutional guarantee that serves as the substantive basis or catalyst of the privacy right. That basic misapprehension grows out of the fact that the right of privacy enshrined in article I, section 6 is stand-alone, *see Mallan*, 86 Hawai'i at 486–87, 950 P.2d at 224–25 (Levinson, J., dissenting) (" 'The right to personal autonomy, to dictate his lifestyle, to be oneself are included in this concept of privacy. As Justice Abe stated in his concurring opinion in *State v. Kantner*, 53 Haw. 327, 493 P.2d 306 (1972): each person has the "fundamental right of liberty to make a fool of himself as long as his act does not endanger others, and that *the state may regulate conduct of a person under pain of criminal punishment only when his actions affect the general welfare–that is, where others are harmed or likely to be harmed."* ... The importance of this amendment is that it establishes that certain rights deserve special judicial protection from majority rule. It recognizes that there will always be a dynamic tension between majority rule, which is the basis of a democratic society, and the rights of individuals to do as they choose, which is the basis of freedom.... Your Committee ... intends that the right [of privacy] be considered a fundamental right and that interference with the activities protected by it be minimal.' ") (quoting Stand. Comm. Rep. No. 69, *reprinted in* 1 Proceedings of the Constitutional Convention of Hawai'i of 1978 (1980) (some emphasis deleted)), unlike the federally recognized constitutional right to privacy, which emanates from the "penumbra" of other expressly enumerated protections contained in the federal Bill of Rights and is therefore, of necessity, parasitic of them. *See, e.g., Griswold v. Connecticut,* 381 U.S. 479, 484–85, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) ("[S]pecific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance.... We have had many controversies over these penumbral rights of 'privacy and repose.' "); *Schmerber v. California,* 384 U.S. 757, 778, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (Douglas, J., dissenting) ("We are dealing with the right of privacy which ... we have held to be within the penumbra of some specific guarantees of the Bill of Rights."). Indeed, Chief Justice Moon's suggestion that "the inquiry is whether the purported right to possess and use marijuana, which is not a fundamental right, would transform into such a right when the activity is conducted in the home" (emphasis omitted) and his conclusion that "it does not," Chief Justice Moon's concurring and dissenting opinion at 408, 168 P.3d at 538, is another example of the fallacy of trivialization that I discussed extensively in my *Mallan* dissent, as well as another manifestation of the *Mallan* plurality's misapprehension. The issue is not whether there is a fundamental constitutional right to possess and use marijuana in the home. The issue is whether article I, section 6, which establishes a fundamental right to *privacy* and which, as noted above, the framers expressly intended to limit the state's power to "regulate conduct of a person under pain of criminal punishment" to instances "where others are harmed or likely to be harmed," constrains the state from criminalizing mere possession of marijuana for personal use. My thesis is that it does.