**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 15 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

---

DAVID S. PETERSON,

        Plaintiff-Appellant,

   v.

JOHN SHANKS, Warden, WILFRED
ROMERO, and MAJOR RUBEN
VIGIL,

        Defendants-Appellees.

No. 96-2190

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-95-865-C)

---

Submitted on the briefs:

Jeffrey J. Buckels, Albuquerque, New Mexico, for Plaintiff-Appellant.

Melinda L. Wolinsky and Ida M. Lujan, Deputy General Counsel, New Mexico
Corrections Department, Santa Fe, New Mexico, for Defendants-Appellees.

---

Before **MURPHY, HOLLOWAY,** and **MAGILL,**[*] Circuit Judges.

---

[*]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals
for the Eighth Circuit, sitting by designation.

**MAGILL,** Circuit Judge.

———————————

David S. Peterson, an inmate at the Penitentiary of New Mexico, brought this pro se suit under 42 U.S.C. § 1983, alleging that prison officials had violated his right to be free from retaliation for the exercise of constitutional rights, his right to have access to the courts, and his right to family visitation. Peterson also raised claims that prison officials violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68, the New Mexico anti-racketeering statute, N.M. Stat. Ann. §§ 30-42-1 to 30-42-6, and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4. The district court dismissed the family visitation, RICO, New Mexico anti-racketeering, and RFRA counts for failure to state a claim, and granted summary judgment on the access to courts and retaliation claims. Peterson now appeals, and we affirm.

## I.

Peterson has been incarcerated in the New Mexico state prison system since 1988. From November 23, 1988, until November 22, 1994, Peterson was housed at the Central New Mexico Correctional Facility, where he proved himself to be an ambitious jailhouse lawyer. Peterson represented a number of inmates at administrative hearings, filed habeas corpus petitions, and brought lawsuits against prison officials.

On December 10, 1993, one day after Peterson attended a child custody hearing, Peterson was placed in segregation for allegedly attempting to escape from prison. Peterson alleges that Warden John Shanks, a defendant in the instant suit, visited him at his segregation cell and said: "'You tricky little bastard, I've got you now. I'm going to fuck you for each and every suit you have done against me and the prison. You tried to escape and I got your ass.'" Amend. Compl. at 2, reprinted in R. at Tab 23. Following his alleged escape attempt, Peterson spent forty-nine days in segregation and was removed from the honor unit of the prison. Peterson contends that Warden Shanks directed a hearing officer to find him guilty of attempting to escape, but that the charge was dismissed on appeal for lack of evidence.

On March 18, 1994, Peterson filed suit in New Mexico state court against Warden Shanks, seeking to have the Warden removed from office. In his suit, Peterson alleged that Warden Shanks received bribes from a food service company in exchange for not enforcing the prison's contract with the company. In September 1994, the New Mexico trial court ruled against Peterson, and Peterson began pursuing an appeal in the case.

Peterson alleges that Warden Shanks was angry with him for filing the March 18 lawsuit. In the summer of 1994, Peterson was removed from an inmate-child visitation program (the Impact Program), and he was denied a vegetarian

diet that he allegedly required for an unidentified religious faith. On November 10, 1994, Peterson was again placed in segregation, this time because he had been assaulted while housed in the prison's general population. Although Peterson now contends that he was not at risk from other inmates at the Central New Mexico Correctional Facility, Peterson was transferred to the Penitentiary of New Mexico on November 22, 1994.

At the time of his transfer, Peterson was working on a reply brief on his word processor for his appeal of the dismissal of his March 18 lawsuit against Warden Shanks. The Penitentiary of New Mexico, however, prohibits inmates from possessing computers, because inmates can put escape plans, lotteries, and betting sheets in encrypted files. See PNM Procedures: Inmate Personal Property § II(C)(1)(j) (1994) ("Typewriters may be electric or manual, but may not possess computer, or disk operating features, i.e., floppy discs, magnetic cards, etc." (emphasis in original)), reprinted in R. at Tab 33; Id. § II(C)(5) ("Computer hardware or software will not be sold in the canteens or allowed as personal property."), reprinted in R. at Tab 33. Accordingly, Peterson's word processor and floppy disks were confiscated and given to his father. Although the New Mexico Court of Appeals repeatedly gave Peterson extensions of time in which to file his reply brief, Peterson never filed a reply brief, and the trial court was ultimately affirmed.

On April 8, 1995, Warden Shanks also transferred from the Central New Mexico Correctional Facility and became the warden of the Penitentiary of New Mexico. Following Warden Shank's arrival at the Penitentiary of New Mexico, Peterson contends that Warden Shanks ordered prison employees to read Peterson's mail, and that a contract Peterson mailed to a friend was removed and destroyed. Peterson also contends that he was denied a transfer into a clean and quiet housing unit at the penitentiary.

On August 7, 1995, Peterson filed this lawsuit in the United States District Court for the District of New Mexico against Warden Shanks and other officials of the Penitentiary of New Mexico. On March 21, 1996, the magistrate judge recommended dismissing all of Peterson's claims, except for the retaliation and access to courts claims, for Peterson's failure to state a claim upon which relief could be granted. The district court adopted the recommendation without modification. On July 12, 1996, after the defendants filed a report pursuant to Martinez v. Aaron, 570 F.2d 317, 319-20 (10th Cir. 1978) (per curiam), the magistrate judge recommended granting summary judgment against Peterson on his remaining claims. The district court again adopted the magistrate's

recommendation and granted summary judgment against Peterson. Peterson now appeals.[1]

## II.

We review the district court's dismissal of Peterson's complaint and grant of summary judgment de novo. See Coosewoon v. Meridian Oil Co., 25 F.3d 920, 924, 929 (10th Cir. 1994). Because Peterson filed his complaint pro se, we must construe his complaint liberally. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

> "We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."

Id. (footnote omitted). Accordingly, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded." Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

---

[1]During the pendency of this appeal, Peterson has filed motions with this Court to sanction the defendants for contempt, to amend the docketing statement, and to amend this Court's prior grant of Peterson's motion for additional time. These motions are denied.

In considering an inmate's suit against prison officials, we recognize "that courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safley, 482 U.S. 78, 84 (1987) (quotations omitted). As the Supreme Court has explained,

> "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities."

Id. at 84-85 (quotations and citation omitted).

We have held that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his" constitutional rights. Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." Id. at 948. As the Supreme Court made clear in Turner, however, it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in

protected activity. Accordingly, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." Id. at 949-50. An inmate claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. DuBois, 922 F.2d 560, 562 n.1 (10th Cir. 1990) (emphasis added).

We conclude that Peterson's allegations of retaliation must fail because he has presented no evidence that the defendants' alleged retaliatory motives were the "but for" cause of the defendants' actions. Peterson's placement in segregation following his alleged escape attempt could not have been in retaliation for his March 18 suit against Warden Shanks: Peterson was placed in segregation on December 10, 1993, over three months before Peterson would file his suit. While Peterson's complaint suggests that he was placed in segregation in retaliation for his advocacy efforts on behalf of other inmates, this Court has made clear that an inmate "does not have a protected interest in providing legal representation to other inmates." Smith, 899 F.2d at 950.

Peterson's allegation that his word processor was removed in retaliation for his March 18 suit against Warden Shanks is similarly meritless. The Penitentiary of New Mexico has an explicit, written policy prohibiting inmates from possessing computers. Peterson has not alleged that the defendants failed to

enforce this policy towards all inmates, and Peterson has no right to be exempted from a generally applicable prison regulation.

Nor can Peterson's transfer to the Penitentiary of New Mexico support a cause of action for retaliation. As Peterson acknowledged, prison officials believed that he had been assaulted while at the Central New Mexico Correctional Facility, prompting his placement in segregation. See Letter from David S. Peterson to the Hon. Pamela B. Minzner, Chief Judge, New Mexico Court of Appeals (11/18/94) ("Recently I was placed in segregation. The prison administrators believe that I either got into a fight or was assaulted."), reprinted in R. at Tab 33. Rather than keep Peterson in segregation to protect him from other inmates, Peterson was transferred to another facility--which we conclude is a reasonable means of meeting the legitimate penological interest of preserving Peterson's safety. See Frazier, 922 F.2d at 562 (allegedly retaliatory transfer of inmate must be reasonably related to legitimate penological interests).

Peterson's remaining allegations of retaliation are based on mere speculation rather than evidence. For example, Peterson has not referred us to any evidentiary support for his assertion that his mail was read and destroyed by the defendants, and our examination of the record revealed no such evidentiary support. Accordingly, we conclude that the district court properly granted summary judgment against Peterson on his claim of retaliation.

Peterson's remaining claims are meritless.  Peterson's RFRA claim, which is based on the defendants' failure to provide a vegetarian diet for Peterson's unnamed religion, is no longer actionable.  See City of Boerne v. Flores, 117 S. Ct. 2157, 2171-72 (1997) (holding that RFRA is unconstitutional as applied to state governments).  In addition, Peterson's allegation that he was denied the right to family visitation because he was unable to participate in the Impact Program is not a viable claim under § 1983.  Contrary to Peterson's apparent assumption that his right to visitation is absolute, the Supreme Court has held that inmates have no right to unfettered visitation.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989).  Rather, prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner, see Ramos v. Lamm, 639 F.2d 559, 580 (10th Cir. 1980), and Peterson has not alleged that this discretion has been abused.

The district court also properly dismissed Peterson's claims based on Warden Shanks's alleged racketeering activities.  A private RICO claim can only be brought by a plaintiff claiming a personal injury arising from the use or investment of racketeering income, see Grider v. Texas Oil & Gas Corp., 868 F.2d 1147, 1149 (10th Cir. 1989), and Peterson has alleged no such injury.  To state a claim under New Mexico's anti-racketeering statute, Peterson was required to allege an actual injury.  See N.M. Stat. Ann. § 30-42-6(A) (allowing a cause of

-10-

action by one "who sustains injury to his person, business or property by a pattern of racketeering activity"). Rather than allege a specific, actual injury, however, Peterson's complaint only alleges that "Shanks jeopardized the saftey [sic] and security of the prison employees and the inmates by not enforcing the contract." Amend. Compl. at 2F. Because "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based," Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (quotations omitted), we conclude that the district court properly dismissed this claim as well.

Finally, the district court properly granted summary judgment against Peterson on his denial of access to courts claim. Peterson bases his claim on the defendants' removal of Peterson's word processor, which allegedly interfered with Peterson's filing of a reply brief to the New Mexico Court of Appeals. To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from the defendants' actions. See Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (per curiam) ("an inmate must satisfy the standing requirement of 'actual injury' by showing that the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim"); see also Peterson v. Vargas, No. 93-2143, 1994 WL 50452, at *2 (10th Cir. Feb. 22, 1994) (unpublished) (affirming grant of summary judgment against denial of access to courts claim brought by Peterson in a prior suit against a different prison official

because "Peterson has failed to produce evidence sufficient to show that he was actually prejudiced by Vargas' alleged conduct").  In this case, the New Mexico Court of Appeals gave Peterson multiple opportunities to complete his reply brief.  Despite having ample time to complete his reply brief without his word processor, Peterson chose not to do so.  Because Peterson did not accept the opportunities that were offered to him, he cannot complain of prejudice at this late date.

Accordingly, we AFFIRM the judgment of the district court.