MacArthur DENSON, Plaintiff,

v.

John MARSHALL, Jr. and Mark Powers, Defendants.

Civil Action No. 98–11156–WGY.

United States District Court, D. Massachusetts.

March 31, 1999.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. *Introduction*

The plaintiff, MacArthur Denson ("Denson"), is a state prison inmate housed at the Massachusetts Correctional Institution Cedar Junction in Walpole ("Cedar Junction"). Denson, a practicing Muslim, brings this civil rights action against Cedar Junction Superintendent John Marshall, Jr. ("Marshall") and Cedar Junction Deputy Superintendent Mark Powers ("Powers") for violation of the Religious Freedom Restoration Act ("RFRA"), the Free Exercise Clause of the First Amendment of the United States Constitution, and the Massachusetts Declaration of Rights. Both sides' summary judgment motions are now before the Court.

## II. *Background*

The following facts are undisputed:

Denson is serving a ten year disciplinary sentence in the Department Disciplinary Unit ("the Unit") at Cedar Junction for raping a female therapist at the Massachusetts Treatment Center on July 10, 1997.[1] At the time of the attack, Denson was serving a prison term for a previous conviction of aggravated rape.

The Unit consists of inmates found guilty of serious and repetitive disciplinary offenses while in prison. *See* Marshall Aff. at ¶ 3. The Unit houses "the most violent, assaultive and disruptive inmates in the Commonwealth." *Id.* Inmates are sentenced to the Unit as a punitive measure in order to deter their own and other inmates' serious misconduct in the Commonwealth's prisons. *See id.* Consequently, the Unit is a restrictive environment. *See id.* While prisoners can earn certain privileges, such as telephone calls, social visits, and television, for good behavior, they do

MacArthur Denson, MCI Walpole, South Walpole, MA, pro se.

Ann M. McCarthy, Mass. Dept. of Corrections, Boston, MA, for defendants.

---

**1.** Denson was convicted of aggravated rape in connection with the July 10 incident on October 26, 1998, and sentenced to thirty to forty years in prison to be served during and after his previous sentence for aggravated rape.

not have canteen privileges, except to buy postage stamps. *See id.* at ¶¶ 3, 4.

On April 23, 1998, Denson sent a letter to Marshall seeking special food arrangements in order to observe three religious fast days per month. *See* Pl. Mem., Ex. A. These fasts typically occur in the middle of the month and require observers to abstain from food and drink between sunrise and sunset. *See* Rahim Aff. at ¶ 6. Because Denson cannot purchase food at the canteen, he asked Marshall to replace his regular meals on fast days with the caloric equivalent of cereal, milk, bread, peanut butter and jelly that he can eat before and after daylight hours. *See* Pl. Mem., Ex. A. On May 19, 1998, Powers informed Denson that his request had been denied. *See id.* at Ex. B. Denson filed suit on June 8, 1998.

### III. *Summary Judgment Standard*

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

### IV. *Discussion*

#### A. *RFRA*

■ The Supreme Court recently held RFRA unconstitutional as applied to state governments. *See City of Boerne v. P.F. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Denson's claim under RFRA is therefore no longer actionable. *See Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir.1998). Accordingly, this Court GRANTS Marshall and Powers' motion for summary judgment and DENIES Denson's motion for summary judgment as to the RFRA count of Denson's complaint.

#### B. *Free Exercise*

■ Prisoners do not forfeit all constitutional protections simply by virtue of their incarceration. *See Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Supreme Court has specifically held that inmates retain some First Amendment protections, *see Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), including the free exercise of religion, *see Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam).[2]

■ Prisoners, however, do not enjoy the same level of constitutional protections as do ordinary citizens. *See, e.g., Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."). Consequently, courts scrutinize allegedly unconstitutional prison regulations under a "reasonableness" standard which is less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). A prison regulation is valid so long as "it is reasonably related to legitimate penological interests." *Id.*

■ In determining whether a prison regulation passes constitutional muster, courts give great deference to the "considered judgment of prison administrators 'who are actually charged with and trained in the running of the particular institution under examination.'" *Id.* at 349, 107 S.Ct. 2400 (quoting *Bell,* 441 U.S. at 562, 99 S.Ct. 1861). Two separate policies underlying our system of government justify such deference. First, because prison ad-

---

2. The Massachusetts Declaration of Rights, which offers a parallel guarantee of free exercise, also protects the Commonwealth's prisoners. *See Rasheed v. Dubois,* No. 96–4599, slip op. at 3 n. 1 (Mass.Sup.Ct. Nov. 17, 1998) (holding that prison officials could not preclude a prisoner at Walpole from wearing an Islamic pendent around his neck).

ministration falls within the province of the legislative and executive branches, separation of powers concerns counsel judicial restraint. *See Turner v. Safley*, 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Second, when an inmate allegedly suffers constitutional harm in a state prison, comity between state and federal regimes provides an additional reason for federal courts to defer to prison officials. *See id.*

■ Taking the judgment of prison administrators into account, a court must consider three factors in order to determine whether a particular prison regulation violates an inmate's constitutional rights. First, there must be a valid, rational connection between the regulation and the legitimate governmental interest set forth to justify it. *See id.* at 89, 107 S.Ct. 2254. Second, the court must consider whether the inmate retains alternative means through which to exercise the right. *See id.* at 90, 107 S.Ct. 2254. Finally, the court must examine the impact of the requested accommodation on prison guards, other inmates, and the allocation of prison resources. *See id.*

This Court is unable to analyze Denson's claims at this time because Marshall and Powers appear to misunderstand the nature of his request. In his letter to Marshall, Denson acknowledges that were he among the general prison population, he could buy food at the canteen to eat at his discretion. As an inmate housed in the Unit, however, he cannot purchase food at the canteen; thus, he requests alternative arrangements, such as the delivery of milk and bread to his cell during certain hours. *See* Pl. Mem., Ex. A.

Marshall and Powers appear to think that Denson seeks permission to buy food from the canteen, and they have tailored their motion for summary judgment accordingly. *See* Marshall Aff. at ¶¶ 7–8. Marshall and Powers have set forth legitimate penological interests related to the refusal of canteen privileges, have spelled out how granting Denson canteen privileges would negatively impact other inmates and the objectives of the Unit, and have demonstrated that Muslim inmates are given other avenues through which to exercise their religious beliefs. Had Denson actually requested permission to buy food from the canteen, this Court would have no choice but to grant Marshall and Powers' motion for summary judgment. *See O'Lone*, 482 U.S. at 350–53, 107 S.Ct. 2400 (holding that prison's refusal to allow Muslim prisoners to attend a weekly service in a separate facility did not offend the Free Exercise Clause).

Unfortunately for Marshall and Powers, Denson has not asked for permission to purchase food from the canteen. He has asked to receive the equivalent of three days of food per month in the form of milk, bread, cereal, peanut butter, and jelly so that he may eat during particular hours. Because Marshall and Powers have not responded to this request, this Court DENIES their motion for summary judgment.

This Court declines to rule on Denson's motion for summary judgment at this time. Rather, the Court requires Marshall and Powers, within sixty days of the date of this order, either to comply with Denson's request for special food arrangements or to file supplementary materials for summary judgment addressing his actual request.

## V. Conclusion

For the foregoing reasons, this Court GRANTS Marshall and Power's motion for summary judgment on Denson's RFRA claim and DENIES Denson's motion for summary judgment on the same; DENIES Marshall and Power's motion for summary judgment on the civil rights claims; and requires Marshall and Powers either to accommodate Denson's request or file additional summary judgment materials with this Court within sixty days.