**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES RALPH DAWSON, JR.,

    Plaintiff - Appellant,

v.

PAUL AUDET; DONALD
BRIGHTWELL; ANGEL MEDINA,

    Defendants - Appellees,

and

SUSAN AUDET, a/k/a Deanne Audet;
DINO WILLIAMS; STEVEN OWENS;
ANTHONY DECESARO,

    Defendants.

No. 15-1103
(D.C. No. 1:12-CV-00901-MSK-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

James Ralph Dawson, Jr., an inmate proceeding pro se, appeals the district court's grant of summary judgment to defendant Paul Audet on his First Amendment retaliation claim. We affirm.

## BACKGROUND

On September 30, 2011, Mr. Dawson reported to his job in the Limon Correctional Facility's (LCF) recreation department, where Mr. Audet was his supervisor. Mr. Audet filed an incident report describing what happened next:

> [A]t approximately 0830, I . . . was approached by Offender Dawson who informed me that he needed to return to his living unit to make a legal phone call. I advised Dawson that he was at work and was expected to complete his regularly scheduled shift. Dawson stated "you are refusing me legal access, I'm going to grieve you." I then told Dawson to return to his living unit and that he would be released from Recreation to find employment that was more suited to his needs.

R. at 370.

For summary-judgment purposes, Mr. Dawson accepted the narrative of events contained in the incident report. *Id.* at 343. In support of defendants' motion for summary judgment, however, Mr. Audet submitted an affidavit in which he asserted additional facts not contained in the report. He averred that on September 30, he instructed recreation staff to have offenders pull weeds in the west yard. Although a majority of the offenders complied, Mr. Dawson "lingered within the recreation building and had to be told again to go pull weeds outside." *Id.* at 434. Mr. Dawson "continued to loiter and make excuses" for not working, then stated "that he had to return to his unit to make a legal phone call." *Id.*

2

Mr. Audet noted that the regulations at LCF require that all legal visits and calls are to be pre-scheduled. When an inmate has such an appointment, he is to remain in his cell house. This avoids "the need to move offenders through numerous security envelopes" during the middle of the day, thus drawing staff "away from their assigned posts." *Id.* Mr. Dawson had not pre-scheduled his phone call.

Mr. Audet also stated that he "advised [Mr.] Dawson that he needed to make phone calls on his own time and, for the third time, [told him] to return to the yard to pull weeds as assigned." *Id.* He "firmly believed [Mr.] Dawson was manufacturing yet another excuse not to work on that date." *Id.* Mr. Audet further stated that although Mr. Dawson threatened to grieve him after being instructed to return to work for a third time, Mr. Dawson's "threat was not the reason for his termination from Recreation." *Id.* at 435. Rather, Mr. Audet terminated Mr. Dawson's employment "because of his refusal to work and follow orders which was a disruption to Recreation work and other offenders." *Id.*

In response, Mr. Dawson argued that Mr. Audet's affidavit was "submitted to create a 'sham' factual issue for purpose[s] of summary judgment." *Id.* at 547. He challenged Mr. Audet's statement that he "ha[d] to be asked to go to work 3 times." *Id.* He contended that if this allegation was true, the defendants would have mentioned it previously in the incident report and in their responses to his grievances concerning the incident. But he did not deny that the responses indicated that he was terminated for failing to work, that he had sought to leave during his assigned work

3

shift to make an unscheduled phone call, or that he had argued with Mr. Audet when told he needed to remain at work and to complete his assigned shift.

Mr. Dawson filed a motion for partial summary judgment, and the defendants, including Mr. Audet, filed a motion for summary judgment.[1] The district court denied Mr. Dawson's motion and granted the defendants' motion in favor of Mr. Audet, ruling that he was entitled to qualified immunity on Mr. Dawson's First Amendment retaliation claim. The district court reasoned that Mr. Dawson had not shown that it was clearly established "that an inmate's threat to file a grievance against a prison official enjoys First Amendment protection." *Id.* at 559.

## DISCUSSION

We review the grant of summary judgment de novo, applying the same standard as the district court did. *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012) (internal quotation

---

[1] Before the defendants answered his complaint, Mr. Dawson filed a prior motion for partial summary judgment, which the district court denied without prejudice as premature. To the extent the allegations, arguments, or evidence in this prior motion differed from those asserted in Mr. Dawson's later summary-judgment briefing, and were not specifically reasserted therein, we have not considered them.

4

marks omitted). We may affirm summary judgment for any reason that finds adequate support in the record. *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (alteration and internal quotation marks omitted). In particular, officials may not retaliate against prisoners for filing administrative grievances. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). To prove Mr. Audet's liability for retaliation, Mr. Dawson was required to show: (1) he "was engaged in constitutionally protected activity"; (2) Mr. Audet caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Mr. Audet's "action was substantially motivated as a response to [Mr. Dawson's] exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). To satisfy the third prong, Mr. Dawson was required to establish that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks omitted). This appeal presents issues involving the first and third elements of the retaliation test.

## 1. Protected Activity

We begin with the first element, protected activity. In his summary-judgment briefing, Mr. Dawson asserted that his threat to file a grievance was protected activity for First Amendment purposes. But in his opening brief in this court, he attempts to

5

expand his assertions of protected activity to include other activities as well. We reject this attempt to expand the scope of the issues.

Mr. Dawson argues that his protected conduct began on August 26, 2011, when Mr. Audet responded to a prior grievance Mr. Dawson had filed. He contends this grievance constituted protected activity that we must consider for purposes of his retaliation claim.

But Mr. Dawson did not rely on the alleged prior grievance in his summary-judgment filings concerning this claim. Instead, he began his factual recitation concerning this claim with the events of September 30, 2011—the same day the district court used as a starting point. *See* R. at 343, 406-07. In fact, Mr. Dawson specifically argued in his motion for partial summary judgment that "[t]he fact that the Plaintiff *had not yet filed a grievance against Defendant Paul Audet* [by the time Mr. Audet terminated his employment] is of no consequence." *Id.* at 344 (emphasis added).

To the extent Mr. Dawson made mention of the prior grievance in his verified complaint, *see id.* at 24,[2] his complaint did not allege a connection between this grievance and the termination of his employment sufficient to give rise to a retaliation claim. Instead, the complaint repeatedly asserted that Mr. Audet retaliated against Mr. Dawson "for telling him that I was going to grieve him for not allowing

_____

[2] We may treat a verified complaint as an affidavit for summary-judgment purposes, to the extent it satisfies Fed. R. Civ. P. 56 standards. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010).

6

me to leave work . . . to call my civil rights attorney." *Id.* at 26; *see also id.* at 27, 28.[3]

Mr. Dawson also asserts that the district court ignored the fact that during his argument with Mr. Audet, he "was complaining to Audet about being denied legal access." Aplt. Opening Br. at 3. To the extent he is arguing that, in addition to his threat to file a grievance, his complaint to Mr. Audet constituted protected conduct because it asserted a denial of legal access through an unscheduled phone call to his attorney, we reject his contention. Mr. Dawson fails to develop any argument that requesting to make an unscheduled phone call in violation of prison procedures was protected conduct for purposes of his retaliation claim. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are . . . inadequately presented . . . in an appellant's opening brief.").

---

[3] After the district court entered summary judgment on this claim, Mr. Dawson filed a motion "objecting" to the summary-judgment order and seeking additional findings. He complained that "[t]he Court did not acknowledge that the conduct giving rise to . . . Plaintiff's retaliation claim . . . began on August 26, 2011 and not September 30th, 2011 as assumed by the Court." R. at 585.

The district court apparently found this argument unpersuasive, because it denied Mr. Dawson's motion. But we cannot review that denial. Although the record contains a minute order denying the motion, *see id.* at 594, this minute order provides no reasons for the denial. Mr. Dawson has not furnished us with a transcript that would inform us why the district court denied his motion, including how it evaluated the evidence. The record on appeal should include the transcript of proceedings, where necessary to our review. *See* Fed. R. App. P. 10(b)(1); *see also* 10th Cir. R. 10.1(A)(1) (appellant has duty to "provide all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal.").

In light of all this, we hold that Mr. Dawson may only pursue his original theory: that Mr. Audet fired him from his prison job for threatening to file a grievance.

### 2. Retaliatory Motive

We need not determine as a general matter whether a threat to file a prison grievance constitutes protected activity, or whether Mr. Dawson's First Amendment right to make such a threat was clearly established at the time Mr. Audet terminated his employment. Summary judgment is appropriate here on a different ground. In order to support his First Amendment retaliation claim, Mr. Dawson had to demonstrate a genuine factual dispute concerning whether, absent his threat to file a grievance, Mr. Audet would have fired him from his employment. Under the particular facts of this case, we hold that Mr. Dawson has failed to meet this burden.

Even if we disregard Mr. Audet's evidence that Mr. Dawson refused to pull weeds after being instructed to do so several times, the record supports the stated reason for termination of Mr. Dawson's employment: Mr. Audet's perception that Mr. Dawson was attempting to avoid work. Mr. Dawson has admitted that he did not have the right under prison policy to leave work to make the unscheduled phone call. *See* R. at 349.[4] Yet he insisted on his right to make the call, and argued with

---

[4] Mr. Dawson argued in the district court that Mr. Audet made him leave work, in violation of prison policy, after he requested to make the unscheduled phone call. To the extent this was an attempt to show that Mr. Audet's refusal to permit him to make the call due to concerns about prisoner movement was pretextual, it fails to demonstrate a genuine issue of material fact. Sending Mr. Dawson back to the pod

(continued)

8

Mr. Audet about the issue. Mr. Dawson has failed to cast doubt on Mr. Audet's statements that he believed Mr. Dawson's attempt to place an unscheduled phone call was merely an attempt to avoid work, and that this attempt to avoid work, not the reference to filing a grievance, was the reason he fired Mr. Dawson.

As it happens, Mr. Dawson's defiance was accompanied by his threat to file a grievance. But this did not change the fact that when instructed to return to work, he chose to argue with Mr. Audet. Given the concerns with order and control in a prison, the passing reference to a grievance is insufficient to demonstrate a retaliatory motive.

Prisons are unique. "Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison." *Gee*, 627 F.3d at 1185. "[P]risoners' rights may be restricted in ways that would raise grave First Amendment concerns outside the prison context." *Id.* at 1187 (internal quotation marks omitted). "Consequently, a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts." *Id.* at 1185.

> As the Supreme Court made clear in *Turner* [*v. Safley*, 482 U.S. 78 (1987)], . . . it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. Obviously, an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity. Accordingly, a plaintiff must prove that but for the

and terminating his employment is a different matter than permitting him to go back to the pod just to make a phone call.

retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place. An inmate claiming retaliation must alleged *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights.

*Peterson,* 149 F.3d at 1144 (internal quotation marks omitted).

Under these particular facts, even the immediacy of Mr. Audet's termination decision following Mr. Dawson's reference to a grievance does not allow for the inference of a retaliatory motive. Close temporal proximity alone is rarely sufficient to make a plaintiff's case. *See, e.g., Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014) ("[T]emporal proximity between the protected speech and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive.").[5] Although in some situations, a showing of adverse action very close in time to the exercise of protected conduct may be sufficient to meet the plaintiff's burden, *see, e.g.*, *Proctor v. UPS*, 502 F.3d 1200, 1209 (10th Cir. 2007), here, temporal proximity cannot overcome the fact that when he made the threat Mr. Dawson was engaging in insubordinate conduct that led to his termination.

In sum, Mr. Dawson's showing falls short of the "specific facts" he was required to demonstrate "showing retaliation because of the exercise of [his]

---

[5] In *Gee*, we found that an inmate had sufficiently alleged the third element of his claim for First Amendment retaliation where his complaint included allegations that "Defendants were aware of his protected activity, that his protected activity complained of Defendants' actions, and that the transfer was in close temporal proximity to the protected activity." 627 F.3d at 1189. *Gee* differs from this case in that it was decided at the motion-to-dismiss stage, when the defendants had not yet had the opportunity to present evidence concerning their justification for the allegedly retaliatory action.

constitutional rights," specifically, that his termination from employment would not have taken place had he not made reference to a grievance. *Peterson*, 149 F.3d at 1144. Summary judgment is appropriate here because Mr. Dawson has failed to demonstrate a genuine issue of material fact concerning Mr. Audet's retaliatory motive.

## CONCLUSION

The district court's judgment is affirmed.[6] We grant Mr. Dawson's motion to proceed in forma pauperis in this appeal, and remind him of his obligation to continue making periodic payments.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[6] In his opening brief, Mr. Dawson alluded to a variety of issues and claims involving various defendants. In his reply brief, however, he clarified that he intended to raise only the issue we have considered: whether the district court properly granted summary judgment in favor of Mr. Audet on his First Amendment retaliation claim. *See* Reply Br. at 2. Accordingly, we have not considered the other issues mentioned in his opening brief.