**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TYRONE WALKER,

     Plaintiff - Appellant,

v.

DAVID SCHERBARTH, in individual and
official capacities; WESLEY WILSON, in
individual and official capacities;
FRANKIE NICKELS, in individual and
official capacities; VIRGINIA PAGE, in
individual and official capacities; FELICIA
BROOKS, in individual and official
capacities; JEAN PETERSON, in
individual and official capacities;
RAMONA PHIPPS, in individual and
official capacities; BRIAN UHRICH, in
individual and official capacities; ALLEN
HARMS, in individual and official
capacities; CURTIS DEINES, in individual
and official capacities; D. HILLYER, in
individual and official capacities;
FITZGERALD, in individual and official
capacities; HIGGINS, in individual and
official capacities; KEVIN VORWALD, in
individual and official capacities; MARC
BOLT, in individual and official capacities,

     Defendants - Appellees.

No. 16-1233
(D.C. No. 1:15-CV-00823-MJW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding

(continued)

_____

Before **HOLMES**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Tyrone Walker, a Colorado prisoner proceeding without the assistance of counsel, appeals the district court's grant of summary judgment to defendants on his claims of First-Amendment retaliation. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

The Colorado Department of Corrections (DOC) requires that incarcerated persons be given work assignments. Before 2012, Mr. Walker was incarcerated at the Sterling Correctional Facility, where he was assigned to work as an offender care aide (OCA). In June 2012, he was transferred to the Limon Correctional Facility, where he was also assigned to work as an OCA. Mr. Walker was transferred back to Sterling in August 2013 and was assigned to Food Services, which, according to one of Mr. Walker's case managers, "is a typical assignment for inmates arriving at Sterling." R. Vol. 1 at 549.

Mr. Walker, however, refused to work in Food Services on August 16, 2013, because doing so entailed an 8-hour shift, which would not leave adequate time to conduct research and draft filings for his myriad lawsuits, one or more of which are related to the water quality at Sterling, which was found to have traces of uranium on

precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

multiple occasions. He insists that he was given approval to continue his assignment as an OCA after his arrival at Sterling. On August 22, prison officials circulated a memorandum to inmates stating that Sterling's drinking water had again tested for high levels of uranium. Mr. Walker requested a grievance form to complain about the water quality on August 26. On September 5, his case manager informed Mr. Walker that, if he continued to refuse work in Food Services, he would be referred to the "Classification Committee for possible placement in Restricted Privileges" (RP), R. Vol. 1 at 550, which is a program where inmates have certain privileges taken away. Despite additional warnings thereafter, Mr. Walker continued to refuse and was placed in RP on September 23, 2013, though he has since been released from RP.

Mr. Walker filed this lawsuit on April 17, 2015. In his most recent amended complaint, he alleged that he was retaliated against for grieving the water quality at Sterling by being placed in RP. He also alleged violations of due process, but those claims were dismissed by the district court on the defendants' motion. Mr. Walker does not appeal that dismissal here. The defendants then moved for summary judgment. In response, Mr. Walker essentially argued that although prison regulations proscribe inmates from refusing work assignments, they permit inmates to refuse *reassignments* from an existing assignment.

The district court granted summary judgment to the defendants, holding that Mr. Walker failed to establish "but for" causation with regard to any retaliation by the defendants because his undisputed "refusal to participate in a Food Services

3

assignment triggered disciplinary action" regardless of whether the defendants had a retaliatory motive. R. Vol. 1 at 614. Specifically, the court found that, under administrative regulations, Mr. Walker did not retain any right to his assignment as an OCA upon transfer from Limon to Sterling, and even if he did, "nothing in these regulations places a limit on the prison's ability to reassign him, and nothing suggests that [he] was not subject to discipline for refusing a reassignment." R. Vol. 1 at 613. The court noted that "the regulations do not support any inference that inmates have a right to pick their work assignments at will." R. Vol. 1 at 613. Addressing Mr. Walker's proposed distinction between refusing assignments and reassignments, the court reasoned that when the prison "imposes a reassignment, it is necessarily true that the previous assignment is no longer DOC sanctioned." R. Vol. 1 at 612.

On appeal, Mr. Walker presents the following errors for our review: (1) the district court dismissed six claims that the defendants did not move for summary judgment on; (2) the district court based its decision on an argument that neither the defendants nor Mr. Walker addressed, thus violating Federal Rule of Civil Procedure 56(f); (3) Mr. Walker demonstrated a genuine issue of material fact regarding the causation element of his retaliation claims; and (4) the district court ignored the defendants' retaliatory motive in rendering its decision. We address the alleged procedural errors first.

## II

We review the grant of summary judgment de novo, applying the same legal standard as the district court. *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir.

4

2010).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012) (internal quotation marks omitted).  We may affirm summary judgment for any reason that finds adequate support in the record.  *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).

## A

Mr. Walker argues that the district court ignored claims four, six, eight, ten, twelve, and fourteen of his complaint, all of which relate to his continued placement in RP, not merely the initial placement.  He insists that the defendants only moved for summary judgment on his first three claims regarding his initial placement in RP.  After a thorough review of the defendants' motion for summary judgment, we can find no limitation to Mr. Walker's first three claims of retaliation.  In fact, the motion expressly argues that defendants' "placing and *maintaining*" of Mr. Walker in RP "was required and justified by policy and not intended to infringe on any protected activity."  R. Vol. 1 at 341 (emphasis added).  We thus discern no error by the district court in adjudicating Mr. Walker's claims relating to post-placement retaliation.

5

**B**[1]

With regard to Mr. Walker's Rule 56 claim, he contends that the district court "was not fully informed, and that it erroneously added the argument of 're-assignment.'"  Opening Br. at 7.  He is referring to the district court's characterization of his argument for a distinction between inmates refusing an assignment and refusing a reassignment.  Rule 56 requires a court to give "notice and a reasonable time to respond" before granting a summary-judgment "motion on grounds not raised by a party," Fed. R. Civ. P. 56(f), but we clearly see in Mr. Walker's response to the motion for summary judgment where he made this argument:

> Plaintiff admits that he did not accept the Job in Food Services. . . . Plaintiff argues that because he was assigned as an O.C.A. at the time of the alleged incident, he was not required to accept the Food Service assignment. Plaintiff also contends that because he had a Job as an O.C.A., he could not be subjected to the sanctions of [Administrative Regulation] 600-05. This is because R.P. is not a sanction that can be imposed against a prisoner who has a facility Job. . . . [F]or a prisoner to be approved for placement on R.P., he must have had "refused to participate in" his "assigned" Job or program. Because Plaintiff was assigned as an O.C.A. and not to Food Services, the act of not participating in Food Services — a Job Plaintiff was not assigned to — could not be used as a predicate to subject him to R.P.

R. Vol. 1 at 570–71 (brackets omitted).  Though he did not phrase this argument as succinctly as the district court did, we think the district court's characterization of the

---

[1] To the extent that Mr. Walker's arguments regarding this issue touch on the district court's issuance of its order before the deadline to file a reply brief, there is no requirement that a district court wait for or consider a reply brief.  *See* D. Colo. L. Civ. R. 7.1(d) (indicating that reply briefs are optional and that the district court may rule on a motion any time after filing).

argument is faithful and accurate. But even if it were not, "district courts . . . possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). And there can be no doubt here that Mr. Walker was on notice to present all of his evidence.

Mr. Walker's proposed smoking gun does nothing to dislodge this conclusion. He points to an Implementation Adjustment that requires a change of assignment to be "'reviewed by the [offender's] case manager, current supervisor, and prospective supervisor.'" Opening Br. at 8 (quoting I.A. 850-03). He says he would have raised this provision if he had known the district court would find a distinction between assignment and reassignment. But Mr. Walker points to no evidence in the record showing his assignment to Food Services was not reviewed as required; all he musters are conclusory allegations. The district court therefore did not grant the motion on grounds not raised by a party, much less do so without notice and time to respond.

## C

Having disposed of the procedural claims of error, we arrive at the merits of Mr. Walker's cause of action for retaliation. Mr. Walker argues that he demonstrated a genuine issue of material fact by showing that he was not subject to RP pursuant to DOC policy and producing an affidavit from Lewis Moore, an offender he cared for as an OCA. He also contends that documents in the record, which do not reflect any assignment as an OCA at Sterling, were "doctored, altered, and otherwise falsified"

7

by the defendants to remove any such reference. Opening Br. at 16. He maintains that he provided information showing that defendants were wrong about the timeline of events — that Mr. Walker was not told about RP as a potential sanction until September 5, 2013, thus demonstrating that RP was not a consideration until after he grieved the water quality at Sterling.

"[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks omitted). A First-Amendment retaliation claim requires proof of the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). "Obviously, an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity," so to satisfy the third prong of this analysis, Mr. Walker was required to establish that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks omitted).

In the DOC, "[a]n offender who transfers to another facility/unit, for any reason, does not retain the right to any previous assignment." Admin. Reg. § 850-03(IV)(F)(3), *available at* R. Vol. 1 at 599. Additionally, "[a]ny DOC

8

offender who refuses to participate in, or is terminated from, a DOC sanctioned work or treatment program is subject to Restricted Privileges Status and the offender's case manager shall initiate a restricted privileges (RP) status review."  Admin. Reg. § 600-05(IV)(A)(1), *available at* R. Vol. 1 at 498.  In this provision, "refusal" is defined as "[a]ny condition caused by offenders' actions/conduct that precludes their [active] participation in work assignments."  Admin. Reg. § 600-05(III)(C) & (F), *available at* R. Vol. 1 at 497–98.

We are not persuaded by Mr. Walker's arguments for a number of reasons. First, with regard to Mr. Moore's affidavit, it is scant, stating only that Mr. Walker was temporarily assigned as his OCA "around August[] 2013."  R. Vol. 1 at 583. Information presented in a nonmovant's affidavit, however, "must be based on personal knowledge and must set forth facts that would be admissible in evidence." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) (alterations and internal quotation marks omitted).  In this affidavit, there is no factual foundation for Mr. Moore's personal knowledge of Mr. Walker's work assignment or any specificity as to *when* Mr. Walker was purportedly assigned as an OCA.  The affidavit is therefore "conclusory and self-serving," *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (internal quotation marks omitted), and does not demonstrate a genuine issue of material fact.

Without the affidavit, we are left with a multitude of prison records that do not reveal any assignment as an OCA at Sterling, temporary or otherwise, and Mr. Walker's assertion that such records were forged.  While we will not sanction the

9

falsification of records, Mr. Walker has not proffered any evidence to create a triable fact issue as to whether a particular defendant altered his prisoner records. *See, e.g.*, *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007) (holding broad allegation of conspiracy to fabricate prison misconduct charge failed to state a claim for relief); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding that "mere allegations of falsified evidence," without more, do not state a claim). This contention is thus insufficient to overturn the district court's grant of summary judgment.

Regardless of these defects in his claims, the timeline of events reflected in the record does not support Mr. Walker's allegations of retaliation. Specifically, Mr. Walker first informed the supervisor of Food Services on August 16 that he "would not work in the kitchen because he needed to go to [the] law library."[2] R. Vol. 1 at 494. Given that prison officials did not apprise the Sterling population of the water quality until August 22, there is no way his placement in RP could be in retaliation for his water-quality grievance. Rather, as the simplest explanation would dictate, Mr. Walker's placement in RP was a consequence of his refusal to work in Food Services, as this consequence is mandatory under administrative policy. *See* Admin. Reg. § 600-05(IV)(A)(1) (requiring that "the offender's case manager *shall* initiate a [RP] status review" (emphasis added)). Mr. Walker's allegations that RP

---

[2] According to the food-service supervisor, Mr. Walker would still have "plenty of time to take care of his legal matters" while working in Food Services. R. Vol. 1 at 494.

only became a consequence for him after he grieved the water quality on August 26 are baseless and belied by the regulations. Furthermore, in light of prison policy that gives Mr. Walker no right in his previous assignment as an OCA in Limon, *see* Admin. Reg. § 850-03(IV)(F)(3), it is clear that his placement in RP would have taken place regardless of any retaliatory motive on the part of the defendants. *See McBeth v. Himes*, 598 F.3d 708, 719 (10th Cir. 2010) ("If there is a finding that retaliation was not the but-for cause of the adverse action, the claim fails for lack of causal connection . . . despite proof of some retaliatory animus in the official's mind." (alterations and internal quotation marks omitted)).

In his arguments to the contrary, Mr. Walker confuses not being told about RP until September 5 as evidence that the DOC was not considering RP until that date. In reality, pursuant to policy, RP was a consequence of his refusal to accept his food-service assignment from the moment he refused on August 16; it is of no moment that the DOC gave Mr. Walker multiple warnings before referring him for RP. *See* Admin. Reg. § 600-05(IV)(A)(1). Additionally, though Mr. Walker complains of his continued placement in RP despite appeals and it being normal for inmates to rotate out of RP, the defendants presented evidence that it is routine for inmates moving out of RP to be assigned to Food Services. *See* R. Vol. 1 at 557. Mr. Walker continued to refuse an assignment there, complaining that "he needed more time to work on his court cases." *Id.* Accordingly, Mr. Walker has not raised any genuine issue of material fact on appeal.

11

**D**

Having concluded that his retaliation claim fails regardless of any retaliatory motive the defendants may have had, it is not necessary for us to rule on Mr. Walker's fourth claim of error — that the district court ignored evidence of the defendants' retaliatory motive.

**III**

In this case, Mr. Walker experienced "the normal conditions of confinement," natural consequences of his stated refusal to work in Food Services. *See Peterson*, 149 F.3d at 1144. We therefore affirm the district court's grant of summary judgment to the defendants. We also grant Mr. Walker's motion to proceed without prepayment of fees.

Entered for the Court


Bobby R. Baldock
Circuit Judge

12