**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 2, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MELVIN L. SHIELDS, 47149,

    Plaintiff - Appellant,

v.

SAM CLINE, Warden, El Dorado
Correctional Facility, in his individual
capacity; EL DORADO
CORRECTIONAL FACILITY,
Segregation Review Board; T. O'BRIEN,
EAI, El Dorado Correctional Facility, in
his individual capacity; ALLISON
AUSTIN, UTS, El Dorado Correctional
Facility, in her individual capacity; (FNU)
KELLY, Sergeant, El Dorado Correctional
Facility, in his individual capacity; DAN
SCHNURR, Warden, Hutchinson
Correctional Facility, in his individual
capacity; HUTCHINSON
CORRECTIONAL FACILITY,
Segregation Review Board; (FNU)
VANHOOSE, Major, Hutchinson
Correctional Facility, in his individual
capacity; JORDAN BELL, Unit Team
Manager, Hutchinson Correctional Facility,
in his individual capacity; B.H.
STANSBURY, Segregation Review Board
Member, Hutchinson Correctional Facility,
in his individual capacity,

    Defendants - Appellees.

No. 20-3127
(D.C. No. 5:20-CV-03077-SAC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

Melvin Shields appeals the district court's dismissal of his 42 U.S.C. § 1983

claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

This appeal arises from Shields' incarceration at the El Dorado Correctional

Facility in Kansas. Shields alleges that defendant Sergeant Kelly wrote a false

disciplinary report, with knowledge that the report was false, that caused Shields to be

placed on pre-hearing detention. Two days later, he was placed on long-term segregation

("OSR" status) without a disciplinary hearing. Shields claims that his placement on OSR

status was justified by his 2019 first-degree murder conviction for a cold case that

occurred in 1988 and two prison disciplinary charges assessed fifteen and nineteen years

prior to his complaint. He further alleges that he remained in administrative segregation

for five months without meaningful segregation review hearings even though the false

disciplinary report was later dismissed. Finally, he claims he was retaliated against for

objecting to his segregation by being moved to the more restrictive A3 cellhouse.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In his original complaint, Shields asserted claims under § 1983, alleging that (1) defendant Kelly wrote a false disciplinary report that caused him to be placed in pre-hearing detention, (2) his administrative segregation violated his due process rights, (3) defendants retaliated against him for exercising his First Amendment rights, (4) his prison disciplinary sanctions violated double jeopardy, (5) defendants acted with deliberate indifference to his medical conditions, and (6) defendants violated an independent constitutional right to have his grievance investigated. The district court dismissed Shields' claims and denied Shields leave to proceed in forma pauperis ("IFP") on appeal because he did not present a nonfrivolous argument for relief and his appeal was not taken in good faith. Shields appeals the district court's denial of (1) his due process claim, (2) his claim pertaining to Kelly's false disciplinary report, and (3) his First Amendment retaliation claim.

**II**

Before considering the merits of Shields' appeal, we must determine whether he may proceed under 28 U.S.C. § 1915(g). Pursuant to the Prison Litigation Reform Act of 1995, prisoners are usually required to pay the full amount of the filing fees at the outset of their appeal. Strope v. Cummings, 653 F.3d 1271, 1273 (10th Cir. 2011). Indigent prisoners, however, "need not pay federal court filing fees in full prior to initiating an appeal" so long as they have not accumulated three strikes for actions or appeals that are dismissed for being frivolous, malicious, or failing to state a claim. Id. (internal quotations and citations omitted).

Shields accumulated two strikes prior to these proceedings.  Shields v. Koerner, et al., No. 5:00-cv-03328-GTV (D. Kan. Nov 14, 2000); Shields v. Hopkins, et al., No. 5:00-cv-03296-GTV (D. Kan. Nov. 15, 2000).  Additionally, the district court held that Shields "failed to present the court with a plausible federal claim for relief which would justify the court retaining jurisdiction over this matter," thereby granting a third strike.  However, because Shields accrued his third strike as the result of the dismissal of the case underlying this appeal, we can consider whether the district court erred in concluding that Shields failed to allege a plausible federal claim for relief.  Hafed v. Fed. Bureau of Prisons, 635 F.3d 1172, 1177 (10th Cir. 2011) abrogated in part by Coleman v. Tollefson, 575 U.S. 532 (2015).[1]  Because Shields had not accrued three strikes prior to these proceedings and because he meets the indigency requirements, we **GRANT** leave to proceed IFP.

### III

We liberally construe a pro se appellant's briefs.  Davis v. Clifford, 825 F.3d 1131, 1134 n.1 (10th Cir. 2016).  However, we do not act as the pro se litigant's advocate.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  We "will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that

---

[1] Coleman abrogated the holding in Hafed that a strike never counts "against a litigant until he has exhausted or waived his appeals."  Hafed, 635 F.3d at 1176; see also Carr v. Zwally, 760 F. App'x 550, 558 (10th Cir. 2019) (recognizing abrogation in part).  However, Coleman explicitly declined to consider "an attempt to appeal from the trial court's dismissal of [a] third complaint."  Coleman, 135 S. Ct. at 1765.  Accordingly, Hafed remains binding 10th Circuit precedent on this issue.

have not been pleaded." Peterson v. Shanks, 149 F.3d 1140, 1143 (10th Cir. 1998) (quotation omitted).

## A

Shields alleges that his due process rights were violated when he was placed in long-term segregation for five months without a disciplinary hearing and without meaningful monthly segregation review hearings.

Prison conditions that "'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' may create a liberty interest protected by the Due Process Clause." Fogle v. Pierson, 435 F.3d 1252, 1259 (10th Cir. 2006) (alteration adopted) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). To determine whether there is a protected liberty interest, courts generally consider factors such as "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate." Estate of DiMarco v. Wyo. Dep't of Corrections, 473 F.3d 1334, 1342 (10th Cir. 2007).

Based on Shields' allegations, the administrative segregation did not further a legitimate penological interest. Shields alleges that he was placed in administrative segregation for five months because of his conviction for a cold case murder that occurred thirty years earlier, two incidences of prior prison misconduct from fifteen and nineteen years ago, and a disciplinary report that was subsequently dismissed. Without additional justification, we cannot conclude that decades-old conduct constitutes a safety concern sufficient to warrant present-day segregation. This is especially true considering

- 5 -

Shields alleges that he lived in the general population without incident for years after his past misconduct.

However, the other three factors weigh against Shields. Shields failed to allege sufficient facts that his segregation "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Wilkinson v. Austin, 545 U.S. 209, 222–23 (2005) (emphasis added) (quotation omitted). Shields only alleges that administrative segregation is more restrictive and that he is not allowed contact visitation, three hot meals a day, or access to all of the resources in the law library. Although administrative segregation imposes an inherent hardship, see Davis v. Ayala, 576 U.S. 257, 287 (2015) (Kennedy, J., concurring), the fact of isolating confinement is not in and of itself enough to create a liberty interest. See Sandin, 515 U.S. at 486. Shields' other allegations are not atypical to the ordinary incidents of prison life. Id. at 484. Additionally, Shields does not allege that his placement increased the duration of his confinement or that it was indeterminate. He was segregated for five months, and he received monthly review board hearings. Though he alleges that these hearings were a "sham," he does allege any facts to support this claim. For these reasons, we conclude that Shields failed to allege a deprivation of a constitutionally protected liberty interest.

**B**

Shields claims that Kelly wrote a false disciplinary report that caused him to be placed on pre-hearing detention and long-term segregation. This conclusory assertion is insufficient to provide fair notice of a claim. See Escobar v. Mora, 496 F. App'x 806,

816 (10th Cir. 2012)[2] ("[M]ere allegations of falsified evidence or misconduct reports, without more, do not state a claim." (internal citation and quotations omitted)). Accordingly, this claim was properly dismissed.

**C**

Shields alleges that he was retaliated against for objecting to his segregation by being moved to the A3 cellhouse. He notes that he was moved the day after he wrote a request asserting that he can challenge the manner in which his segregation decision was made.

Prison officials "may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." Peterson, 149 F.3d at 1144. To claim retaliation, an inmate "must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (emphasis in original). The retaliation claim must allege that the retaliatory action was sufficient to chill an ordinary person from exercising his or her constitutional rights. See Moceck v. City of Albuquerque, 813 F.3d 912, 930 (10th Cir. 2015).

Inmates have a First Amendment right to petition the government for redress of grievances, including inmate administrative appeals. See Fogle, 435 F.3d at 1264. If Shields was retaliated against for filing administrative grievances, the defendants may be liable for violating his constitutional rights. Id. However, Shields does not demonstrate that he suffered from a retaliatory action sufficient to chill an ordinary person from

---

[2] This unpublished opinion is cited for its persuasive value only. See 10th Cir. R. 32.1(A).

exercising his constitutional rights.  He states that he was moved from his current cell to a "more restrictive" cellhouse but does not provide any further detail about the additional restrictions.  This allegation, without more, is not enough to allege sufficient harm to state a First Amendment retaliation claim.  Accordingly, the district court properly dismissed this claim.

## IV

For the forgoing reasons, we **AFFIRM**.  Shields' motion to proceed IFP is **GRANTED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge